## ALEXANDER MILLER *vs.* WILLIAM MOTTER.

### *Statute of Limitations — Construction of the Act of 1868, ch. 116, sec. 2.*

In an action on a joint and several note against one of the makers thereof, the other maker being dead, it is not competent for the plaintiff, the payee of the note, for the purpose of removing the bar of the Statute of Limitations, to testify on his own offer, that the deceased maker made a payment on the note, and at the time of such payment, endorsed the same on the note in his own hand-writing.

APPEAL from the Circuit Court for Washington County. The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and MILLER, J.

*Henry Kyd Douglas,* for the appellant.

The note sued upon in this case is joint and several. A separate action was brought against the administrator of Wason, on his note, and that action cannot involve or prejudice the present one against the appellee. Each of these cases stood upon its own merits, by itself, and had to be tried by the rules of evidence applicable to each. An action commenced against one would not preclude a remedy against the other.

If we regard this as an action brought by the appellant against the appellee, upon his own note, both parties to the suit being alive and in Court, the Act of 1864, (sec. 2,) did not prevent the plaintiff from testifying. This being a separate contract or cause of action between the appellant and the appellee, no original party to it is dead, nor is there an executor or administrator being sued.

The appellant proposed to show that James Wason, the co-maker with the appellee, made the payment of $55, as

credited, within three years from the date of the note, and before the Statute of Limitations began to run; and that such payment was a sufficient answer to the appellee's plea of the Statute of Limitations. The payment and promise of one was the payment and promise of both. *Chitty on Bills,* 614, *and notes; Byles on Bills,* 342, *and notes; Angell on Limitations, sec.* 248, *et seq.;* 1 *Rob. Prac.,* 549 ; *Ellicott vs. Nichols,* 7 *Gill,* 103 ; *Whitcomb vs. Whiting,* 2 *Doug.,* 652 ; *Burleigh vs. Stott,* 8 *Barn. & Cres.,* 36 ; *Pease vs. Hirst,* 10 *Barn. & Cres.,* 122.

The relative rights and duties of co-contractors, on a note like that signed by the appellee and Wason, are very similar to those of partners in like cases.

Before the Act of Lord TENTERDEN and the Mercantile Law Amendment Act, (1856,) the law in England was—as it is now in the United States—part payment of principal or interest by one partner was considered as made by him as agent for the other partners, and operated as a good answer to the plea of the Statute of Limitations.

Now the reason is the same in the case of co-makers of a joint and several note. If A and B make such a note, and at any time A makes a payment on that note he does not make the payment merely for himself, (for both are bound to see the note paid,) but he makes one-half of the payment for B, and to that extent and in that view A is the agent of B at the time of the payment. In all *bona fide* dealings in and concerning that note, each is the agent of the other. Suppose after such payment A should die, and a suit being instituted upon the note against B, he should plead the Statute of Limitations, would it not be competent for the plaintiff to prove (and he be a competent witness to prove) that such payment had been made by A, and when made—not for the purpose of affecting the estate of A, but for the purpose of binding B by the act and admission of his agent—for the purpose of proving that in fact B, the defendant, made the payment through his agent, A.

In this view it can make no difference whether at the time of the trial A be living or dead, solvent or insolvent, present or absconded. The testimony is admissible under the first section of the Act of 1864, (or 1868,) and is not obnoxious to the second section. There being no attempt in this suit to enforce the note against the estate of A, the second section does not apply. *Whitcomb vs. Whiting,* 2 *Douglas,* 652; *Wyatt vs. Hodson,* 8 *Bing.,* 309; *Winter vs. Innes,* 4 *Mylne & Cr.,* 101; *Jackson vs. Woolley,* 8 *Ellis & Blackb.,* 787, overruling *Thompson vs. Walthman,* 3 *Drew.,* 628. · The principle of these cases is adopted in the United States. *Ellicott vs. Nichols,* 7 *Gill,* 85; *Grant vs. Jackson, Peake's N. P. C.,* 203; *Thwartes vs. Richardson, Peake's N. P. C.,* 16; *Gow on Partnership,* 211–213.

*Attorney General Syester,* for the appellee.

The appellant was no more competent to testify—upon his own offer and in his own behalf—in this case, than he would have been in his suit, on the same cause of action, against the administrator of Wason, which he had just *non prossed.* The cause of action, or the contract in each case, is the same, and a judgment against the surviving maker of a joint and several and promissory note, is the establishment of a claim against the estate of the deceased. And thus the estate of the deceased is burdened by the testimony of a surviving party to a contract or cause of action, just as completely (though it may not always be to the same amount) as if he were testifying in a direct action against the personal representative himself.

The design of the Act of 1864, chap. 109, under which parties to suits are permitted to testify on their own offer, and in their own behalf, was that they should do so upon terms of perfect equality. And that the *surviving party to a transaction in issue* shall not enjoy the unfair advantage of giving his version of the matter, when the lips of the other are sealed in death, or his mind and memory distracted and broken by lunacy or insanity.

Miller vs. Motter.

The property and estates of deceased persons are carefully guarded against those infirmities of human nature, on which the experience of ages has founded the rule of exclusion, which forbids this appellant to be heard in this case. *Card vs. Card*, 39 *N. Y.*, (12 *Tiffany*,) 317; *Johnson and Wife vs. Heald*, 33 *Md.*, 352.

The Act of 1864, ch. 109, is broad enough to cover, by its very terms, the entire ground contended for here. It is true the terms "administrator and executor," are used in the Act as indicating those as parties to suits, against whom such offers of testimony cannot be tolerated. But the language of the Act is even broader than that, and is in these terms: "When an original party to a contract or cause of action is dead, * * * the *other party* * * * shall not be permitted to testify on his own offer," &c., &c.

If the power or right of exclusion had been intended to be confined to actions directly against the estates of deceased persons, in actions against their personal representatives, much that is found in the 2d section of the Act of 1864, would be wholly without meaning.

By the plain terms of the Act, one party to a contract or cause of action cannot be heard to testify on his own offer, when the other is dead, and it lies at the instance of any litigating party to invoke the rule who may in any manner stand related to the estate which is ultimately to be made responsible to any extent, and which it is the policy of the law and Courts to protect and save from such manifest inequality.

It is not the administrator, executor or guardian alone, who may invoke the rule, but any person through whom that estate may be struck down by the testimony of a surviving party to a contract or cause of action.

GRASON, J., delivered the opinion of the Court.

The cause of action in this case is the joint and several note of the appellee and James Wason, bearing date in 1864,

and the suit was instituted in 1869 against Motter alone, Wason then being dead. The statute of limitations was pleaded, and for the purpose of removing the bar of the statute, the appellant offered himself as a witness to prove that James Wason made a payment on the note in 1867, and, at the time of said payment, endorsed the same on the note in his own hand-writing. The appellant's competency a sa witness to prove those facts was objected to, the objection was sustained, the ruling of the Court was excepted to, and the judgment being for the defendant, this appeal was taken.

The only question presented is whether the appellant was a competent witness to prove the facts set out in the exception? Its solution depends upon the construction of the second section of the Act of 1868, chap. 116, which provides that " when an original party to a contract or cause of action is dead, or shown to be lunatic or insane, or when an executor or administrator is a party to the suit, action or other proceeding, either party may be called as a witness by his opponent, but shall not be permitted to testify on his own offer,.or upon the call of his co-plaintiff or co-defendant, otherwise than now by law allowed, unless a nominal party merely." To this rule there are certain exceptions contained in the proviso to the section, which do not apply to this case, and which it is therefore unnecessary to mention. The first section of the Act of 1864, chap. 109 made competent witnesses of certain classes of persons, who were incompetent under the rules of the common law; and the second section, afterwards amended by the Act of 1868, chap. 116, was adopted for the purpose of excepting from the operation of the very general and sweeping provisions of the first section, all parties to the contract or cause of action when an original party to it was dead, or insane, or when an executor or administrator was a party to the suit. A party to a contract or cause of action is not competent to testify on his own offer, either when an original party to it is dead or insane, *or* when an executor or administrator is a party to the suit.

---

Miller *vs.* Motter.

---

In the case of *Johnson and Wife vs. Heald, Ex'r of Frazier*, 33 *Md.*, 368, this Court has said that "it appears to have been the design of this legislation, in admitting parties to suits to testify at their own instance, to provide that they should do so in terms of perfect equality as to knowledge or means of knowledge of the subject-matter of controversy about which they were to speak. It would have been flagrantly unjust to permit a party, whose property was at stake, subjected to all that influence of interest which the infirmity of human nature and the experience of ages had demonstrated to be so powerful as in most cases to shake integrity, and induce a departure from truth, and on which the rule of exclusion in all cases was founded, to go upon the witness stand and tell his story of the transaction, and give his version of the contract against one whose lips were sealed by death or insanity. This obvious rule of justice, mutuality and fairness was not overlooked by the Legislature;" and hence the second section was adopted. The appellant comes directly within the express terms of exclusion under the second section, inasmuch as James Wason, "*an original party to the contract or cause of action*" sued on, was dead at the time of the trial below. But it was contended that both the appellant and appellee were parties to the contract, and that as the suit was against the appellee alone, they stood upon an equality and that both of them could testify. But the evidence sought to be introduced by the appellant was of a transaction alleged to have been had with Wason alone, who was then dead, and could not give his version of that transaction, and consequently there would have been none of that "justice, mutuality and fairness," which the Legislature designed to secure, in permitting the appellant to testify. In addition to this, in the event of a recovery of a judgment against the appellee, he would have had a remedy over against the personal representatives of James Wason, and thus the estate of the latter would have been burdened by means of the testimony of the appellant, when it would have been

inadmissible as against the personal representatives of Wason in a suit brought. directly against them upon the same cause of action. To permit this to be done by indirect means, when it could not directly, would be to defeat "justice, mutuality and fairness," and to violate the spirit and intent of the law.

After the death of James Wason, the appellant was clearly not a competent witness to testify, on his own offer, as to transactions between them during his lifetime.

The ruling of the Court below was correct, and the judgment appealed from must be affirmed,

*Judgment affirmed.*

(Decided 19th March, 1872.)