WILLIAM E. LEWIS and others v. WILLIE B. FORT.

B executed his note with C as surety, payable to the guardian of the plaintiff, who is now dead; the note was assigned by the guardian to the plaintiff, after he became of age. In an action to recover the amount of the note: *It was held,* that B was not a competent witness to prove that he had paid the note to the deceased guardian before its assignment to the plaintiff.

(*McKellar* v. *Bowell,* 4 Hawks, 34; *Armistead* v. *Haraamond,* 4 Hawks, 339; *State* v. *Fullenwider,* 4 Ired , 364; *Bullington* v. *Allen,* 4 Dev., 358; *Chairman* v. *Clark,* 4 Hawks, 43; *Governor* v. *Montford,* 1 Ired., 155; *Governor* v. *Carter,* 3 Ired., 338; *Ives* v. *Jones,* Ibid., 538; *Gaither* v. *Teague,* 4 Ired., 65, cited and approved.)

CIVIL ACTION, tried before SEYMOUR, J., at January Term, 1876, of WAYNE Superior Court.

The action is brought against the administrator of Coley on a note made by B. T. Bardin, as principal, and by Coley and another, who is now dead, as his sureties. The note was payable to the guardian of the plaintiff, who is now dead, and was assigned by the guardian to the plaintiff after he came of age.

The defendant offered to prove by Bardin, the principal in the note, that he, Bardin, paid the note to the deceased guardian before its assignment to the plaintiff. The Judge held the witness incompetent and refused to allow his testimony, to which defendant excepted, and after a verdict and judgment against him, appealed to this Court.

*Faircloth & Grainger,* for the appellant.
*Smith & Strong* and *£medes,* contra.

RODMAN, J., delivering the opinion of the Court, after stating the case as above, proceeded as follows:

It must be admitted that if a judgment for or against the defendant would be evidence against Bardin, the principal in the note, in an action against him by the plaintiff, or in an action against him by the defendant for indemnity after payment of a judgment against him, then Bardin would be interested in the result of the action, and would be an incompetent witness at common law, whether the payee of the note was dead or not.

This proposition embraces two distinct and different questions:

*First.* Would a judgment on the plea of payment for or against the sureties have been evidence in an action by the present plaintiff, the assignee of the note, against the principal? There is some conflict of authorities on this question. But accepting the decisions of this Court as controlling upon us, we consider that independent of the Act of 1844, (Rev. Code, chap. 44, sec. 10,) it would not be.

*McKellar* v. *Bowell,* 4 Hawks, 34, was argued on opposite sides by Ruffin and Gaston, and the opinion of Chief Justice TAYLOR is distinguished by its good sense and learning. It was then held that the record of a recovery against a guardian was not evidence in an action brought by the plaintiff in that action on the guardian bond.

In *Armistead* v. *Harramond,* 4 Hawks, 339, it was held, that a judgment against an administrator for a debt of his intestate was in an action against his sureties upon the administration bond, *evidence of the debt,* but not that the administrator had assets to discharge it. In *State* v. *Fullenwider,* 4 Ired., 364, it was held, that the receipt of a constable for a claim to collect, was not evidence against the sureties to his

bond.   See also *Bullinger* v. *Allen,* 4 Dev., 358; 1 Greenleaf
Ev. sec. 539, a. 12th edition; *Chairman* v. *Clark,* 3 Hawks,
43; *Governor* v. *Montford,* 1 Ire., 155; *Governor* v. *Carter,* 3
Ired., 338; *Ives* v. *Jones,* Ibid 538; *Gaither* v. *Teague,* 4 Ired., 65.

The Act of 1844 is confined to actions on the official bonds
of Clerks, &c., Executors, &c., and has no bearing on the
question in the present case.

*Second.* Would a judgment against the sureties in the
present action be evidence for them in an action by them
against the principal for indemnity ?

In our opinion, independently of the circumstance that
the principal had notice of the present action against his
sureties, and either did defend it or might have done so, the
record of a judgment against the sureties would be evidence
that they were *compelled* to pay *on the note recovered on,* and
of the *amount* that they were so compelled to pay.   1 Green-
leaf Ev., sec. 537.

In the present case the principal, B. T. Bardin, had notice
of the action against his surety, and either did defend it, or
was entitled to do so.

He was therefore a privy to the judgment, and would be
estopped in an action by his sureties for indemity, to set up
anything to defeat the action which would have availed as
a defence in the action against the sureties.   Rawle on Cove-
nants for title, 210; Bigelow on Estoppel, 65; *Duffield* v.
*Scott,* 3 Tenn., R., 374; *Love* v. *Gibson,* 2 Fla., 598; *Smith* v.
*Crompton,* 3 Barn. & Ad., 407; *Littleton* v. *Richardson,* 34 N.
H., 179–187.

By the common law he was incompetent in the present
action to prove payment by reason of an interest in the re-
sult.   The Code of Civil Procedure (Bat. Rev., chap. 17,
sec. 342) abolishes, in general, the disqualification of in-
terest.   But sec. 343 provides that no person who has an
interest to be affected by the result of an action, shall be ex-
amined in regard to any transaction or communication with

a person at the time of such examination deceased, &c., as a witness against a party then prosecuting the action as assignee, &c., of the deceased.

The proposed witness comes within the letter of the prohibition in this proviso, and no less clearly within the mischief intended to be provided against.

Long before the adoption of our present rules of evidence by the State of New York, eminent writers on the theory of evidence had taught that the rules of common law governing its admission were too narrow. They had been framed rather with the view of excluding falsehood than of ascertaining the truth. They supposed an incapability of jurors to distinguish the false from the true in conflicting testimony, which experience, in modern times at least, has contradicted. Interest had never been a disqualification from testifying in the civil law. In conformity to these enlightened doctrines the State of New York, and subsequently England and most of the American States, remodeled their rules of evidence in the direction of greater liberality in admitting witnesses to be heard by the triers of facts. It was thought that parties and persons interested might safely be permitted to testify concerning any transaction between them. It was expected that their testimony would sometimes be wilfully false and perjured, and that in general it would be partial, that some things would be suppressed, some exaggerated and twisted out of their right meaning and significance, and that the truth would come, even from honest witnesses, colored by their interests, prejudices and feelings. In short, no more was expected of human nature than it is usually found to give. But it was thought that notwithstanding this, the intelligence of a jury could be trusted to distil the truth from its mixture with falsehood, provided both parties to the transaction could speak. So far as I know, no writer, either professional or merely philosophic, ever proposed that one party to a transaction should testify

LEWIS and others *v.* FORT.

concerning it, when the other from death or incapacity could not. In such a case there could, in general, be no check on falsehood, no means of correcting or explaining the testimony of the surviving party. Except in the rare cases in which its falsity might be demonstrated from its improbability, it must be received as the pure truth with all the suppressions, omissions, discolorations, exaggerations and distortions, which experience has shown to be almost inevitable in *ex parte* statements, when without restraint by fear of contradiction. Such an unlimited license to testimony would imply a confidence in the truthfulness and unselfishness of men which is not justified by the experience of any age. It would expose, without the possibility of defence, the estates of all persons deceased or otherwise incapacitated, to be plundered by the unscrupulous, and also by all of that class of men—a not very uncommon one—who, while not consciously false, are deluded by their selfish passions into believing things which have no foundation in fact, or who state real occurrences in so partial, exaggerated and distorted a way as to produce all the effects of falsehood.

In the present case, for aught that we can know, the guardian, if living, would deny the alleged payment to him.

The Code not only never intended to make competent against a deceased party to an action, a witness who by reason of interest would have been incompetent at common law against a living party, but it apparently excludes some who would not have been excluded at common law.

In our opinion the witness was incompetent and there was no error in rejecting his testimony.

PER CURIAM.                    Judgment affirmed.