## STEPHENS v. SHORT, ET AL.
(No. 1585; March 10, 1930; 285 Pac. 797)

For the appellants there was a brief by *Fred Wyckoff* of Thermopolis, Wyoming, and *Sterling M. Wood* of Billings, Montana, and oral argument by *Mr. Wood.*

For the respondent there was a brief and oral argument by *C. A. Zaring* of Basin, Wyoming, and *Lin I. Noble* of Thermopolis, Wyoming.

328

*Fred Wyckoff* and *Sterling M. Wood* in reply.

RINER, Justice.

A proceeding by direct appeal from a judgment of the District Court of Hot Springs County, in favor of Vaughn Stephens, plaintiff and respondent, brings this cause here for review. The case appears to have been tried twice, the jury in the first trial disagreeing and the judgment in question being entered upon the verdict of the jury rendered upon the second submission. The defendants and appellants, George B. Short, as administrator of the estate of Frank B. McFarlane, deceased, and Massachusetts Bonding and Insurance Company, a corporation, will be mentioned hereinafter either as the "administrator" and the "surety" respectively, or generally as the "defendants"; while

the plaintiff and respondent will be referred to as the "plaintiff."

The action in the court below was brought by plaintiff upon the official bond of Frank B. McFarlane, as sheriff of Hot Springs County, Wyoming. The defendants were severally the duly qualified administrator of his estate and the surety upon said bond. That obligation was in the penal sum of $4,000, and one of the conditions of the instrument demanded by the statute under which it was given (Sec. 1459, C. S. Wyo. 1920) and appearing therein was that McFarlane, as sheriff of said county of Hot Springs, should "faithfully perform the duties of sheriff of said county as required by law." Plaintiff's cause of action was grounded upon alleged negligence on the part of McFarlane as sheriff and one Ed Goodfellow, his undersheriff, in asserted violation of this condition of the bond, whereby plaintiff suffered severe injuries to his damage in an alleged amount more than double its penalty. A claim for damages in this sum was presented to the administrator and by him rejected, and these facts were duly pleaded in plaintiff's petition. The particular acts of negligence in substance alleged by plaintiff were that the sheriff and undersheriff, being required by law to exercise ordinary and reasonable care for the safety of plaintiff while in their custody and while he was being officially taken in their car to Thermopolis, Wyoming, negligently and carelessly operated the automobile so that it was precipitated over the edge of a ravine and plaintiff injured.

The defendants by their answer put in issue the negligence charged, admitting the execution of the bond and its terms, as well as most of the details of the transaction leading up to the accident out of which plaintiff's injuries arose.

On the trial the proofs on plaintiff's behalf—the defendants not introducing any evidence whatsoever—showed in the main the following state of facts:

Pursuant to a sworn complaint, a criminal warrant had been, on August 21, 1927, issued by a justice of the peace

of Hot Springs County, Wyoming, directing Sheriff Mc-Farlane to arrest the plaintiff and Cal Stephens, his father, and to bring them before the justice to answer a charge of grand larceny. Thereafter and on August 23, 1927, Mc-Farlane and Ed Goodfellow, his undersheriff, proceeded to execute this warrant. They drove in an automobile seven or eight miles easterly from the town of Thermopolis, Wyoming, to an oil lease where plaintiff and his father were employed. Upon arrival at their destination the officers served the warrant, placed the two men under arrest, directed them to get into the back seat of the auto, and the party then started on the return journey to Thermopolis. The undersheriff, Goodfellow, drove the car and McFarlane sat on the front seat beside him.

The road leading back to Thermopolis ran through some rough country and at one point it led, on a down grade, to the edge of a precipice and made such a sharp turn to the left along the edge of the declivity that while a small car could make the turn in safety, a large car, such as the officers had, could not do so without backing up at least once and then proceeding forward around the turn. When the automobile in which the four men were riding approached this turn, the undersheriff, according to plaintiff's testimony, slowed the car nearly to a stop, but he did not cause it to move backward; instead he then shifted the gears of the car in such a way that the vehicle lurched forward and fell over the edge of the cliff, with the result that plaintiff suffered the injuries concerning which complaint is made and all the other occupants of the automobile were killed.

Objection was made on behalf of both defendants and for each of them individually that plaintiff's testimony concerning what took place at the time of the accident was inadmissible against either or both by reason of the provisions of Section 5807, Compiled Statutes of Wyoming 1920. This objection was overruled and due exception was saved to the ruling. Upon the conclusion of plaintiff's case, the defendants renewed this objection in the form of a motion

for a directed verdict in their favor on that as well as other grounds. This motion being denied by the court and an exception to this ruling also taken by defendants, the cause was submitted to the jury and the verdict already mentioned followed. The judgment entered was against both the administrator and the surety.

The official bond given by the sheriff was in form joint and several, and, as required by law (Sec. 1459, W. C. S. 1920) ran to the State of Wyoming, as obligee. However, under Section 5581, W. C. S. 1920, plaintiff, as a "person injured" was entitled to bring the action in his own name. Lynch v. Burgess, 40 Wyo. 30, 273 Pac. 691, 62 A. L. R. 849.

The action of the trial court in receiving plaintiff's testimony over the objection of defendants, made as above recited, as well as the overruling of their motion for a directed verdict, are among the assigned errors presented for our consideration.

Section 5807, supra, contains, among others, the following provisions:

"A party shall not testify where the adverse party is * * * an executor or administrator, * * *

"5. In an action or proceeding by or against a partner or joint contractor, the adverse party shall not testify to transactions with, or admissions by, a partner or joint contractor since deceased, unless the same were made in the presence of the surviving partner or joint contractor; and this rule shall be applied without regard to the character in which the parties sue or are sued.

"* * * and when a case is plainly within the reason and spirit of the last three sections, though not within the strict letter, their principles shall be applied."

From an inspection of this statute as it first appeared in our legislation, as well as the legislation of the state from which it was borrowed, it is clear that the words "the last three sections" appearing in the concluding sentence of Section 5807 were originally intended to refer to the pro-

visions of Sections 5804 to 5807 inclusive—Section 5805 originally not being a separate section but being included in the following section dealing with privileged communications. The word "transaction" as used in such a statute, is a very broad term and has been held to embrace "every variety of affairs which can form the subject of negotiations, interviews, or actions between two persons, and includes every method by which one person can derive impressions or information from the conduct, condition or language of another." Kentucky Utilities Co. v. McCarty's Adm'r, 183 S. W. 237, 239, 169 Ky. 38. To the same effect is 4 Cyc. 2314. See also 7 Words & Phrases (3rd Series) 574, et seq. The word evidently should be regarded as including the accident involved in the instant case.

The contention of defendants is, in general terms, to the following effect: This is a suit on the official bond signed by the sheriff and his surety for an alleged violation of its obligation through his claimed negligence in the particulars above recited, in not protecting plaintiff while in the sheriff's custody; the sheriff is no longer living and his administrator is an adverse party to the plaintiff in the suit; hence Section 5807, supra, forbids plaintiff to testify concerning the accident caused by the sheriff's asserted negligence and that this prohibition protects not only the administrator of the deceased sheriff's estate, but also his surety as well.

For the purpose of this discussion we shall assume, without deciding, that the sheriff is chargeable with and fully liable for the acts of the undersheriff in driving the automobile as he did.

In considering the effect to be given the section of our law thus relied upon by the defendants—the portions of which pertinent to this case have been quoted above—it may be observed first that this section, like most of our civil code, was borrowed from the legislation of the State of Ohio, and came upon the statute books of Wyoming through Section 250 of the Laws of 1886 in territorial days. While the decisions in other jurisdictions, generally, dealing with

the rights of survivors in joint contracts with a party since deceased as against the adverse party are not always helpful, because of wholly dissimilar statutes, yet there are some states whose law, like that of Wyoming, is so framed as, in certain circumstances, to protect surviving joint contractors with the decedent or persons jointly interested or liable with him.

For example, in Hefflebower v. Detrick, 27 W. Va. 16, where the statute read: "No party to an action, * * * nor any person interested in the event thereof * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, * * * against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person * * *," in applying it the court said:

"Under this section it is apparent that the plaintiff Hefflebower was incompetent to testify as to any personal transaction between himself and Reinhart who was dead, at the time the plaintiff was examined, as against either Detrick or Nunemaker who were survivors of said Reinhart, who with them had executed the note in controversy; and Henry Stouffer for whose use the action was brought, being interested in the event thereof, was also incompetent to testify as to any personal transaction or communication between himself and Reinhart, then dead, as against the survivors or either of them, and therefore so much of the testimony given by Hefflebower and Stouffer as details any personal transaction or communication between either of them and Reinhart during his lifetime, must be disregarded in considering this demurrer to evidence."

In Gavin v. Bischoff, 80 Iowa 608, 45 N. W. 306, 307, the suit was against a surviving husband upon a contract under which it was averred that both husband and wife were jointly and severally liable, and, concerning the phase of the case in which we are interested, the opinion reads:

"If it is claimed that, as the contract was made for necessary family expenses, for which both husband and wife were jointly and separately liable, under Code, Section 2214, the action may be maintained against the husband. The ready reply is that the defendant in this case is the survivor of his joint debtor, the wife, and the plaintiff, upon whose evidence the claim is wholly based, cannot testify in the action to charge him as such. Code, Sec. 3639. The application of the section in this case accomplishes the very purpose of its enactment; namely, it prevents living witnesses from establishing contracts, by their own evidence, as to personal transactions and communications with parties whose lips are sealed by death, in actions to which such witness and the representatives, privies and survivors of the deceased are parties."

An instance where the particular rule established by the statute involved was invoked against a surviving joint and several obligor precluding him from testifying against the plaintiff, is Carter v. Hale, 32 Grattan (Va.) 115. The case is illustrative of protection afforded by the statute to the adverse party and against the surviving joint contractor. The law there under consideration read: "And where one of the original parties to the contract or other transaction, which is the subject of the investigation, is dead, or insane, or incompetent to testify by reason of infamy, or other legal cause, the other party shall not be permitted to testify in his own favor, or in favor of any other party having an interest adverse to that of the party so incapable of testifying, unless he shall be first called to testify on behalf of such last mentioned party;" applying the statute, the following language was used by the court:

"These two causes are heard together. The same questions precisely are presented for decision in each. Only one of those questions need be considered and decided, and that is, whether, under the law as it stood on the 28th day of April, 1876 (the date of trial in the court below), in an action of debt instituted on a joint and several bond by the obligee against the surviving obligors, or against the personal representative of a deceased obligor, any one of

the surviving obligors was a competent witness on behalf of the defendants against the plaintiff.

"Upon the authority of several recent decisions of this court, this question must be resolved in the negative."

A case where the statute before the court was in phraseology more closely related to that used in the Wyoming law is that of Niccolls v. Esterly, 16 Kans. 32. There the plaintiff Esterly instituted his action against Niccolls upon a note executed jointly by the latter with McCord and Stewart. The defendant's answer was that the note had been paid in full by Stewart, who had died prior to the commencement of the action. The burden of proof being upon the defendant, he opened the case and called the plaintiff to the witness stand, where the latter was interrogated concerning certain facts of the transactions with the deceased obligor Stewart. When plaintiff testified subsequently in his own behalf, he undertook to state additional facts concerning these transactions about which he had already been questioned. Objection to the competency of this testimony was made by the defendant under a cited section of the civil code of Kansas. The objection was overruled and while this action of the trial court was affirmed, because the defendant having offered plaintiff's testimony on part of the facts of these transactions, the plaintiff was entitled to have the remainder thereof, yet Mr. Justice Brewer, speaking for the court, said:

"That portion of the section referred to which bears upon the question provides, that a party shall not be competent to testify 'to any transaction had personally by such party with a deceased partner or joint contractor in the absence of his surviving partner or joint contractor, when such surviving partner or joint contractor is an adverse party.' This language seems applicable to the case at bar, and to render the testimony offered incompetent; and so we should be constrained to hold but for what had previously transpired."

In the very recent case of Buchan v. Bolte, 284 Pac. (Kans.) 374, decided February 8, 1930, the same court, applying this Kansas law, held that the purchaser of real estate suing a surviving partner on account of a deceased partner's alleged false representations made in connection with the sale, was incompetent to testify as a witness in her own behalf concerning her dealings with the deceased partner which tended to establish such false representations.

Under a statute (Rev. St. Ill. 1874, p. 486, Sec. 4) reading: "In any action, suit or proceeding, by or against any surviving partner or partners, joint contractor or contractors, no adverse party or person adversely interested in the event thereof, shall, by virtue of Section 1 of this act, be rendered a competent witness to testify to any admission or conversation by any deceased partner or joint contractor, unless some one or more of the surviving partners or joint contractors were also present at the time of such admission or conversation," the case of Edward R. Henry, et al. v. Tiffany, 5 Ill. App. 548, arose. The suit was upon a penal bond executed by George B. Henry, as principal, and the appellants Edward R. Henry and others as his sureties. George B. Henry, the principal, had died and the action was against his sureties. Appellee, plaintiff below, was permitted by the trial court to testify to an admission or conversation with the deceased principal, Henry, whereby the latter's liability for breach of the conditions of the bond was made to appear. This testimony was admitted over objections of the sureties, based upon the quoted statute. Reversing the case, the reviewing court said:

"This statute applies to penal bonds as well as to any other class of contracts. Mestling v. Hughes, 89 Ill. 389. The action of debt on bond is purely an action *ex contractu* resting wholly upon an obligation which one or more persons enter into with another or others. The statute was intended to place the parties upon equal footing before the court, and not to give one an undue advantage over the other. When, therefore, one party seeks to charge another by his own testimony, concerning any admission or a con-

versation, he can be permitted to testify only when there remains on the other side a living witness to the same admission or conversation. Langley v. Dodsworth, 81 Ill. 86; Merrill v. Atkin, 59 Ill. 19; Stone v. Cook, 79 Ill. 424; Branger v. Lucy, 82 Ill. 91.''

Mention has been made of the fact that our statute, Section 5807, was borrowed from the state of Ohio. From the decisions in that state it is apparent that the 5th division of the section under consideration underwent some slight revision before it crystallized in the form in which our legislators appropriated it. In the early case of Baxter v. Leith, 28 O. St. 84, decided in 1875, the subdivision in question read:

''In all actions by or against a surviving partner or partners, or a surviving joint contractor or contractors, no adverse party to the suit shall be competent to testify to transactions which took place with, or declarations or admission made by, the deceased partner or joint contractor, in the absence of his surviving partner, or joint contractor.''

Under this language in the cited decision it was held that an adverse party to the action brought by a surviving partner was not a competent witness to testify to the transactions which took place or the declarations made or a conversation had by a deceased partner concerning the partnership business in the absence of the surviving partner.

Thereafter, in the year 1884, two years prior to the original enactment of said Section 5807 by the Wyoming Territorial Legislature, we find Subdivision 5 of the Ohio statute (Rev. St. 1880, Sec. 5242) of similar purport before the court of last resort in that state, in the case of Harrison v. Neely, 41 O. St. 334. We also find that this subdivision had assumed a form identical in language with that now before this court. In that case it was held that under this section, in an action upon a promissory note when the survivor of two joint payees and the administrator of the other are plantiffs, an adverse party may testify to admissions

made or acts done by either payee in the presence of the survivor. In the course of its opinion, concerning the true meaning of Subdivision 5, the court said:

"We think exception 5 should be read as if its form were similar to that of each of the other exceptions in this section; that is as a permission to admit, in the cases named, testimony otherwise excluded by the opening prohibition. Obeying at the same time the instruction of the concluding lines of the section, the following seems to be, upon the whole the true meaning:
"'5. In actions relating to joint contracts, or partnership transactions, the adverse party may testify to words said, or acts done, in presence of the surviving partner, or joint contractor.'"

This court, in the case of Bamforth v. Ihmsen, Adm'r, 28 Wyo. 282, 204 Pac. 345, 356, 205 Pac. 1004, approached rather closely to the matter now in hand when it said:

"Defendant complains of the action of the court in striking out the evidence of the defendant showing that he built the Park ditch and while admitting that the witness was incompetent to testify against the administrator and heirs of Gardner now deceased, claims that the evidence should have been admitted against Arnold. That claim was not made on the trial and the court's attention was not directed to that point as it should have been. Aside from that, the record does not show that Arnold's interest in the ditch is separate and apart from that of the interest of the estate. If not, the evidence was not admissible even against him under Sec. 5807 of our statute, and we cannot, therefore, say that the action of the court in this matter was prejudicial."

With the authorities cited above in view, as well as the express language of Subdivision 5 of Section 5807, supra, it would seem clear that in the case at bar, it being a suit upon a joint contract for an alleged violation of its provisions, the plaintiff should be held incompetent to testify to any act done in his presence by one of the joint obligors relative to matters covered by such contract, unless the sur-

viving joint contractor was also present at the time. When the policy and spirit of the law are regarded, we are unable to perceive that the fact that the contract was in form several, as well as joint, injected any other element into the situation which should properly lead to a different conclusion.

But if it should be thought we are mistaken in this interpretation of Subdivision 5 of Section 5807 aforesaid, there is yet another view of the matter which cannot be overlooked and this arises upon a contention made on behalf of the surety to the following effect: The testimony of the plaintiff concerning the accident being given in an action where the adverse party was an administrator, it was incompetent as to him, under the plain terms of the statute, and to hold such testimony to be competent against the surety and yet incompetent against the administrator would circumvent the statute and effectually nullify its real intent.

It is necessary in determining the force to be given this contention, to have in mind the law regarding the rights of a surety when he is sued with his principal, or if when sued alone he notifies the principal to come in and defend.

In Konitsky v. Meyer, 49 N. Y. 571, it is held that where one party, at the request of another, enters into a contract as surety for the latter, the law implies a promise of indemnity, and the indemnitor is bound by a judgment in a suit brought against the surety upon such contract, of which suit the indemnitor had notice, although there is no provision to that effect in his contract. In Hare v. Grant, 77 N. Car. 203, the decision is of similar purport, it being, as accurately stated in the syllabus of the case, that ''where a surety is sued with his principal or where he is sued alone and notifies his principal, the recovery against the surety is the measure of damages in an action by surety against principal for money paid to his use, and the record of such recovery is conclusive against the principal in such action.''

The well considered language of the court in Littleton v. Richardson, 34 N. H. 179, 66 Am. Dec. 759, citing many authorities, states the rule thus:

"But when a person is responsible over to another, either by operation of law or by express contract—2 Cowen & Hill's Notes 5—and he is duly notified of the pendency of the suit and requested to take upon him the defense of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he was the real and nominal party upon the record. In every such case, if due notice is given to such person, the judgment, if obtained without fraud or collusion—Coates v. Roberts, 4 Rawle (Pa.) 100 — will be conclusive against him, whether he has appeared or not;"

To the same effect is 1 Brandt on Suretyship and Guaranty (3rd Ed.) Sec. 235, p. 474; and Stearns on Suretyship (3rd Ed.) Sec. 286.

The statement of the law, as set forth by the authorities last above cited, we deem to correctly define the surety's rights against his principal, under the circumstances premised. In the case at bar we understood counsel for plaintiff at the argument to concede—and we think rightly —that the testimony of the plaintiff concerning the accident was not properly received against the administrator, and that judgment was incorrectly entered against him. No one except the plaintiff could or did testify at the trial as to what took place when the accident occurred. It was by his testimony that the violation of the terms of the sheriff's bond was undertaken to be established through the asserted negligence of that officer. If it be said that this testimony was rightly admitted against the surety, and the verdict and judgment rendered should stand as against it, then under the principle in the law of suretyship announced in the authorities last above cited, that judgment would be conclusive against the administrator in an action by the surety for exoneration. To urge that

the judgment would not have such effect would be to deprive the surety of all right to indemnity and make it, in practical effect, the only obligor on the bond in suit. The right of the surety to recovery over against the estate being clear, the consequence of admitting plaintiff's testimony in the case at bar would obviously be to establish indirectly the liability of the estate of the deceased sheriff by the very judgment which could not be directly entered against it. This, we think, to be squarely in violation of the plain reason and spirit of Section 5807, supra. We are not without authority in support of this view.

The case of Miller v. Motter, 35 Md. 428, was one where Miller, the plaintiff, sued Motter alone upon a joint and several note signed by Motter and one Wason. At the time the suit was begun, Wason was dead. Motter pleaded the statute of limitations and for the purpose of removing the bar of the statute Miller tendered himself as a witness to prove that Wason had made a payment on the note and at the time of the payment had in his own hand writing endorsed the same upon the paper. The plaintiff's competency as a witness to prove these facts was objected to, the objection sustained and judgment was given for the defendant. Upon appeal the only question before the court was appellant's competency as a witness under the circumstances detailed. In affirming the judgment the appellate court, after quoting the statutes dealing with the competency of witnesses in the state of Maryland, they being of similar purport with our Sections 5804 and 5807, supra, and concluding that: "A party to a contract or cause of action is not competent to testify on his own offer, either when an original party to it is dead or insane, or when an executor or administrator is a party to the suit," said in part:

"The appellant comes directly within the express terms of exclusion under the second section, inasmuch as James Wason, '*an original party to the contract or cause of action*' sued on, was dead at the time of the trial below.

But it was contended that both the appellant and appellee were parties to the contract, and that as the suit was against the appellee alone, they stood upon an equality and that both of them could testify. But the evidence sought to be introduced by the appellant was of a transaction alleged to have been had with Wason alone, who was then dead, and could not give his version of that transaction, and consequently there would have been none of that 'justice, mutuality and fairness,' which the legislature designed to secure, in permitting the appellant to testify. In addition to this, in the event of a recovery of a judgment against the appellee, he would have had a remedy over against the personal representatives of James Wason, and thus the estate of the latter would have been burdened by means of the testimony of the appellant, when it would have been inadmissible as against the personal representatives of Wason in a suit brought directly against them upon the same cause of action. To permit this to be done by indirect means, when it could not directly, would be to defeat 'justice, mutuality and fairness,' and to violate the spirit and intent of the law.

"After the death of James Wason, the appellant was clearly not a competent witness to testify, on his own offer, as to transactions between them during his lifetime."

Again, in State ex rel. Bryant v. Morris, 69 N. Car. 444, the action was brought upon the official bond of Morris, a constable, against the defendant, one of the sureties thereof. In their complaint the relators alleged several breaches of the condition of the bond in that the constable had collected money upon claims put in his hands and not paid it over to relators to whom it was due, and had also negligently failed to collect other claims placed in his hands for collection when the debtors were solvent and they had since become insolvent, resulting in the loss of the claims. The proof established that Morris, the constable, was dead. His personal representative was not made a party to the action. The relators, by one of themselves, were allowed, over objection made to his competency on account of the fact of the constable's being

dead, to prove claimed admissions and transactions with the deceased constable, which tended to establish the breaches of the bond as charged. The jury rendered a verdict in favor of the relators and judgment was given accordingly. Holding that the ruling was error and awarding a *venire de novo* the court said:

"If the plaintiff had sued the administrator of the dead constable, he could not have testified as to any transaction between him and the deceased so as to affect his estate. C. C. P. S. 343.

"But the defendant is not sued as administrator, but as surety of the dead constable, and the question is whether the plaintiff can testify as to transactions between himself and the deceased, which affect the defendant as his surety. It is said that he ought not to be allowed to do this, because whatever he recovers of the defendant as surety, the defendant can recover of the estate of the deceased constable.

"This would seem to be so; and therefore to allow the evidence against the surety is to allow it indirectly against the principal, which is the evil meant to be guarded against by the exception in the statute. So that while the objection to the evidence is not within the *letter,* it is within the *spirit* of the statute."

Many years afterward, a somewhat similar situation came before the same court in the case of McGowan v. Davenport, 134 N. Car. 526, 47 S. E. 27. Concerning the case in hand then, the court, in the course of its opinion, remarked:

"The defendant L. A. McGowan, wife of G. A. McGowan, was but a surety for her husband (Shinn v. Smith, 79 N. C. 310), and, if a recovery is had against her, she will have her action over against her husband's estate for exoneration. Lewis v. Fort, 75 N. C. 251. Any testimony therefore which makes against her, will, in a material respect and in the same degree, though indirectly, affect her husband's estate. The plaintiff being a party and directly interested in the result, was incompetent to give this testimony. This has been expressly decided."

Regarding the Bryant case, supra, which it specifically followed and applied, the court said this:

"The case of Bryant v. Morris had careful consideration by a court of exceptional ability, one of the justices having been a member of the commission which prepared and framed The Code of Civil Procedure. It was decided sometime after Section 343 (now 590) became a law, and at a time when that section had frequently been under consideration by this court, and when it was, as we are inclined to think, quite as well understood as it is now. The case has never been overruled nor questioned as a precedent, but, on the contrary, has been cited with approval, as we will presently show. The principle it lays down being a just and reasonable one, we do not see why the case should not continue to be accepted as an authority."

In the light of these authorities and with the emphatic and positive command of the concluding words of Section 5807, supra, before us, "and when a case is plainly within the reason and spirit of the last three sections, though not within the strict letter, their principles shall be applied," we are constrained to conclude in the case before us that plaintiff's testimony concerning the accident was wholly inadmissible against either defendant and that there was error in the trial court's ruling to the contrary. What we have said in the preceding portion of this opinion makes it unnecessary for us to consider the effect of the case of Aucker v. Adams, 23 O. St. 543, with reference to Section 5581, W. C. S. 1920—a matter very ably argued by counsel for both parties.

The judgment of the District Court of Hot Springs County is therefore reversed, with instructions to grant a new trial.

*Reversed.*

BLUME, C. J., and KIMBALL, J., concur.