## LYNCH v. BURGESS
(No. 1527; Jan. 17, 1929; 273 Pac. 691)
(Rehearing denied March 12, 1929)

*Thomas M. Hyde* and *C. A. Zaring,* both of Basin, for plaintiff in error.

*Thomas M. McKinney, Ray E. Lee* and *Samuel M. Lee,* attorneys for defendant in error.

RINER, Justice.

These proceedings in error were instituted by the plaintiff in error, Mary M. Lynch—hereinafter referred to as the "plaintiff"—to review a judgment of the District Court of Big Horn County, dismissing her petition in the action upon the separate demurrers thereto of the defendants A. C. Burgess, as sheriff of Big Horn County, Wyoming, and National Surety Company of New York—hereinafter generally mentioned as the "defendants"—and upon the refusal of plaintiff to amend her petition or plead further. It is assigned as error that these demurrers should not have been sustained and the action dismissed.

Plaintiff's petition, in outline, is as follows: It alleges that the defendant Burgess was, at all the times referred to therein, the sheriff of Big Horn County, Wyoming, and the defendant National Surety Company of New York was, at such times, a New York corporation, engaged in the business of furnishing official bonds in Wyoming; that on January 5, 1925, before he entered upon his duties as sheriff, Burgess gave bond to the people of the State of Wyoming in the penal sum of $4,000, he being the principal and the corporation aforesaid being the surety thereon; that the obligation was duly approved by the county commissioners of Big Horn County. A copy of the bond was attached to the pleading and made a part thereof, the condition of the instrument being:

"Now Therefore, if the said A. C. Burgess shall well and truly perform the duties of his office according to law without fear, favor or partiality, and shall strictly account for and pay over all moneys and surrender all books, papers, vouchers and property which may come into his possession by virtue of his said office and which should be so paid over or surrendered, then this obligation shall be null and void; otherwise to remain in full force and effect. This bond written for the term of two years, commencing on the 5th day of January, A. D. 1925, and terminating on the 1st Monday in January, A. D. 1927."

The petition also averred that on December 27, 1926, the said Burgess and another, filed before a justice of the peace of Big Horn County, Wyoming, a criminal complaint and affidavits and thereby obtained the issuance of a search warrant to said Burgess, as sheriff of said county, for the search of certain hotel premises situated on designated lots in the town of Greybull in said county, copies of the complaint and affidavits being also affixed to the pleading and made a part thereof. It was then charged that the complaint, affidavits and search warrant were invalid and defective in sundry specified particulars.

The petition further alleged that on the date last mentioned the two front rooms on the first floor and the entire second floor of said hotel building were employed in the hotel business, and that certain rooms immediately back of the two front rooms on the first floor were occupied by plaintiff as her home; that on said day, acting under said search warrant and under color and by virtue of his office as sheriff of Big Horn County, and in violation of the terms of his bond, Burgess, with nine other persons, including his deputy and others called by him to assist, made a search of plaintiff's premises aforesaid for some twenty-two hours, occupying the premises over night, imprisoning plaintiff, forbidding her advice of counsel and subjecting her to other mistreatment, the petition setting forth with considerable particularity what was done by the searching party in the course of the search made. It was finally charged that by reason of these acts, the plaintiff was frightened and "rendered extremely nervous and ill" etc., for which she asked compensation in a named amount.

The defendants separately demurred to plaintiff's petition, for alleged failure to state a cause of action, the demurrer of the surety company setting out the additional ground that the plaintiff had no legal capacity to sue. The action taken by the court below upon the situation thus presented has heretofore been indicated.

It is argued that the action should have been brought in the name of the State of Wyoming, to the use of the plaintiff, and that the litigation cannot be maintained in its present form. We are cited to Section 1391, W. C. S. 1920, which reads:

"Every official bond of any county officer, where not otherwise provided by law, shall be payable to the State of Wyoming, and an action shall lie thereon to the use of any party aggrieved, in the name of the people."

It is said that this section precludes the plaintiff from suing in her own name, regardless of the provisions of Sections 5580 and 5581, W. C. S. 1920, the first of which sections provides, among other things, that "an action must be prosecuted in the name of the real party in interest," and the latter directs that "the rule prescribed in the preceding section may be so applied when a person forfeits his bond or renders his sureties liable, that any person injured thereby, or who is by law entitled to the benefit of his security, may bring an action thereon in his own name against the person and his sureties, to recover the amount to which he is entitled by reason of the delinquency, which action may be prosecuted on a certified copy of the bond." To these contentions we cannot assent.

The author of Bates New Pleading, Vol. 2, page 1155, in discussing Section 11242 of the Ohio Code, identical with our Section 5581 as quoted, supra, says:

"The Ohio reports are full of cases by individuals on the official bonds of public officers, but without comment on the point."

While Madden's edition of Whittaker's Annotated Ohio Civil Code, at page 96, in the first note under Section 11242, remarks that suits on official bonds must be in the name of the state, unless the interests of private persons only are affected. In Bollin v. Blythe, (C. C.) 46 Fed. 181, this language was used:

"The second question raised on demurrer is, can the plaintiff, assignee of the witness' certificates, maintain an action in his own name on the marshal's bond? The demurrer admits the fact that the money has been received by the marshal in his official capacity for these witnesses, and has not been paid by him. The claim is based on a chose in action, and, like any other chose in action, can be assigned. It is not a claim against the government, and therefore does not come within the prohibition of Section 3477 of the Revised Statutes. (31 U. S. C. A. Sec. 203). It is a claim against the marshal. Being assignable, the assignee can maintain an action upon it. This action, under the Code of Civil Procedure in South Carolina, adopted in this court, must be in the name of the real party in interest, the assignee. The courts of the United States have jurisdiction in suits on a marshal's bond, as in a case arising under the laws of the United States. Bachrack v. Norton, 132 U. S. 337, 10 Sup. Ct. Rep. 106. 33 L. Ed. 377. Under Section 784, 28 U. S. C. A. Sec. 500, suit can be brought by the party injured by the breach of the marshal's bond, 'in his own name and for his sole use. It would be a narrow and technical construction of this remedial statute to confine the right to sue to the original holder of the claim. The words, 'in his own name and for his sole use,' mean that, instead of suing in the name of the United States, the obligee of the bond, a private party can sue in his own name; and that the benefit of the suit will inure, primarily, not for all persons injured, but for him solely."

The law of South Dakota required that the sheriff's bond be given to the county whereof he was an officer. A private person brought a suit against the sheriff and the sureties on his bond, executed as by law required, charging a breach of official duty resulting in damage to the plaintiff. The lower court approved the contention of the defendants that an action of this character must always be brought in the name of the county for the use of the party beneficially interested, instead of being instituted in the name of the real party in interest, and directed a verdict in their favor. Upon appeal, the reviewing court in Hollister v. Hubbard, 11 S. Dak. 461, 78 N. W. 949, took a different view of the question—the only one before it in the case—and said:

"While the statute requires that the sheriff's official bond shall be in form given to the county, as a mere matter of expediency, it is designed to protect the public, whose servant he is, and indemnify each person that may be injured by his default or misconduct in office. By becoming the nominal obligee, pursuant to statute, the county assumes no liability for costs, or other responsibility in connection with a suit of this character, and no reason exists for requiring it to be made a party. With certain exceptions, not essentially applicable here, Section 4870 of the Compiled Laws, (1887), provides that 'every action must be prosecuted in the name of the real party in interest,' and the only logical doctrine adducible therefrom is that the county need never be made a party plaintiff, unless injured, or in some manner entitled to something that may be recovered upon the bond. Thus, the Nebraska court holds: 'In an action by a private person for a breach of the conditions of the official bond of a county officer, the county is not a necessary party, even where a reformation of the bond is part of the relief sought.' Stewart v. Carter, 4 Neb. 564. To the same effect, upon principle, see: Rogers v. Gosnell, 51 Mo. 466; Taeffe v. Rosenthal, 7 Cal. 515; People v. Holmes, 5 Wend., (N. Y.) 190-191; Kollock v. Parcher, 52 Wis. 393, 9 N. W. 67; Construction Co. v. McClay, 54 Neb. 663, 74 N. W. 1063. From 3 Enc. Pl. & Prac. at page 640, we quote: 'Under the Codes of Practice, which prescribe that the real party in interest must be the plaintiff, the obligee need not sue if he is not entitled to the beneficial interest in the bond; the party for whose benefit the bond is executed, whether the obligee or some other person, must sue thereon.' Concluding that the county is not a necessary party plaintiff, we reverse the judgment appealed from, and remand the case for new trial."

In view of these authorities, we can see no good reason why the plaintiff should not, in a case of the character now before us, sue in her own name. The language of Section 1391, supra, does not seem to be exclusive, and it is not pointed out how the defendants' rights would be in any way injured by a procedure of this kind. Neither the State of Wyoming nor the County of Big Horn are at all directly interested in the present controversy. The plaintiff is the

"real party in interest"; she claims the conduct of the officer has been such as to render the surety on his official bond liable and that she has been injured. The statute clearly says that under such circumstances she may bring an action on the bond in her own name.

Our attention is directed to the case of Hunter v. Commissioners, 10 O. S. 515, but that was a suit on a county treasurer's bond, to recover money alleged to be due thereunder to the county, and the question was whether a suit by the county commissioners could be maintained, and it was held that it could not, as the commissioners were neither the real party in interest nor had they any legal authority to sue in such a case—that right being vested in the state. The case of State v. Rader, 33 Okla. 350, 125 Pac. 726, is also cited, but that, too, was a case where the real party in interest was not a private person.

It is next insisted that as the demurrers admit that the complaint and affidavits upon which the search warrant was issued, and under which the sheriff and his deputies made the search, are invalid, the surety on his bond is not liable, because an officer, acting under an invalid writ or warrant, is not within the conditions of the bond in suit. Many cases are cited which undoubtedly sustain this view. We find, however, that the authorities are not at all harmonious on the point, and after careful examination of the matter, we have reached the conclusion that the better reasoning is with those decisions which uphold the contrary conclusion.

Ruling Case Law, Volume 24, pages 965-6, Section 59, after mentioning the legal rule adopted by these decisions which are particularly relied upon by the defendants, points out that:

"But according to many of the cases it is clear that the authority of an officer to do a particular act is not the proper criterion of his liability, for the very simple reason that the basis of liability in every instance is want of authority, whether exercised under process or not; and so it is held to be rather incongruous that the rule should be

relaxed insofar as the liability of an officer's sureties are concerned, where the officer goes to the extreme of acting in an apparently official capacity without any process whatever. The test should be: Would he have acted in the particular instance if he were not clothed with his official character, or would he have so acted if he were not an officer? If he assumed to act as an officer—whether under valid or void process, or under no process whatever—the bondsmen should be held, as he is held, for they are the sponsors of his integrity as an officer while acting as such. They should not be absolved from liability for reasons which if carried to their logical extreme would make them responsible only for legal or authorized acts (where of course there is no liability) and excuse them from liability where acts are in excess of or apart from his authority—the very acts which they are supposed to assure against and which constitute the only logical contingency for entering upon their obligation as sureties. Under such a test as this, it is clear that the distinctions drawn out at interminable length in the authorities as between acts *virtute officii* and acts *colore officii* would be deemed of little if any use in practice inasmuch as, from their very nature, they are mere argumentations in a circle.''

In the recent case of Bostetter v. Hinchman, 243 Mich. 589, 220 N. W. 775, a sheriff and his sureties were held responsible for the wrongful killing of plaintiff's intestate by a deputy sheriff who was on the open highway with due orders to search for thieves. There was no claim that the deputy had a warrant for the arrest of the deceased or that the latter had violated any law. The decedent attempted to flee when accosted by the officer. Passing upon the liability of the sheriff and his surety the following language was used:

''The sureties on the bond of a sheriff are liable with him for any trespass committed by him in attempting to discharge his official duties. Charles v. Haskins, 11 Iowa, 329, 77 Am. Dec. 148. An officer who acts in excess of his authority becomes a trespasser, and his acts in excess of such authority breach his official bond. Martin v. Smith, 136 Ky. 804, 125 S. W. 249, 29 L. R. A. (N. S.) 463; John-

son v. Williams' Adm'r., 111 Ky. 289, 63 S. W. 759, 54 L. R. A. 220, 98 Am. St. Rep. 416.''

The case of Jackson v. Harries, 65 Utah 282, 236 Pac. 234, was an action instituted by the plaintiff against the sheriff and the surety on his official bond to recover alleged injuries claimed to have been suffered by her when her premises were searched by the officers under a search and seizure warrant. Discussing the question as to when an officer was acting in his official capacity, and when he was acting as merely an individual, the court quotes from Section 59 of 24 R. C. L., pages 965-6, supra, and then remarks:

"If, therefore, it becomes necessary to enter private homes for the purpose of executing search and seizure warrants under the prohibition act, such a search must nevertheless be made in a lawful and reasonable manner, and not as the evidence discloses it was done in this case. Officers, like others, will be protected only so long as they act within the law."

In Greenius v. American etc. Co., 92 Wash. 401, 159 Pac. 384, L. R. A. 1917F, 1134, it appeared that a constable had arrested and assaulted plaintiffs *without* a warrant or reasonable ground for believing that they had committed a felony. The action was against the constable and his surety. The lower court had dismissed the proceeding against the surety, upon the latter's demurrer to the plaintiff's complaint. In reversing this ruling, the following language was used:

"An official bond is a promise to the state and to all third parties that, in the execution of legal duty, the officer will do it well and without hurt to strangers to his process. The best argument against attempting to fix an arbitrary line of demarcation between acts done *colore officii* and those done in virtue of office is that the cases, after a hundred years of exposition, are in hopeless and interminable confusion. The later authorities preponderate, however, in favor of the doctrine that if an officer have process against A. and,

without reasonable ground for believing him to be the guilty person, execute it upon the person or property of B. his sureties are liable where the bond is conditioned for the faithful performance of the duties of his office. Throop on Public Officers (Sureties, etc.), Sec. 240; Murfree on Sheriffs, Secs. 46a, 47a; Brandt on Suretyship & Guaranty (2d Ed.), Sec. 566.  *   *   *

"If an officer engaged in a search for either goods or persons can run amuck, saying, 'This I did in excess and in violation of my duty and my bondsmen are not, therefore, liable,' we can imagine no case where a surety might be held. The primary purpose of a bond is to insure third parties against the mistakes and trespasses of officers when officially engaged."

The later case of Jahns v. Clark, 138 Wash. 288, 244 Pac. 729, was similar in its facts, so far as the principles of law involved were concerned, and, in reaching a conclusion that the officer and his surety were liable for trespass, the court said in part:

"But the contention is that Thomas' act, being a trespass *ab initio,* was not a lawful act, and not within the scope of his employment, and therefore was an act for which the sheriff and his surety are not liable.  *   *   *

"The argument of these appellants is that Thomas committed a wrong, but it was not an 'official' one. In behalf of this argument discussion is had of the difference between acts done under color of office or by virtue of the office, and the ancient distinction between *colore officii* and *virtute officii* is refurbished and attractively presented. Courts long ago, however, have ceased to view with much tolerance this distinction when liability for unwarranted acts on the part of peace officers is attempted to be evaded by their superior and his sureties, for, as has often been pointed out, if this distinction is carried to its legitimate conclusion, there would never be any liability but his own for the wrongful act of a subordinate peace officer."

The case of Lammon v. Feusier, 111 U. S. 17, 4 S. Ct. 286, 28 L. Ed. 337, decided many years ago by the Supreme Court of the United States, distinctly held that where a marshal, having an attachment against the property of

one person, levied it against the property of a stranger, the sureties on the official bond of the marshal were liable to the stranger because the marshal had acted *colore officii,* although he had acted without sufficient warrant, and Mr. Justice Gray said:

"And the liability of the sureties in such cases has been affirmed by a great preponderance of authority, including decisions in the highest courts of Pennsylvania, Maine, Massachusetts, Ohio, Virginia, Kentucky, Missouri, Iowa, Nebraska, Texas, and California, and in the Supreme Court of the District of Columbia."

In American Guaranty Co. v. McNiece, 111 O. St. 532, 146 N. E. 77, 39 A. L. R. 1289, the action was commenced against a mayor of the City of Cambridge, the chief of police of that municipality, their sureties and others, and was for damages for the unlawful assaulting and shooting of plaintiff. The facts were, briefly, that the mayor, the chief of police and others, with a search warrant to search a certain automobile for intoxicating liquor, proceeded some distance out of the corporate limits of Cambridge and met plaintiff and a young lady, who were also travelling upon the highway by automobile. The officers turned their car around and pursued plaintiff. Finally they passed him, stopped their own conveyance and as plaintiff passed them they fired upon and seriously injured him. The officers had no writ of any kind authorizing plaintiff's arrest, and the search warrant did not authorize them to search his automobile. The officers did not know who was driving the car, which it subsequently appeared was driven by plaintiff, and had no information upon which to base a belief that plaintiff had committed a crime or was in the act of committing a crime. The attempt to stop plaintiff's car and the assault upon him were made wholly upon suspicion that he was engaged in the unlawful transportation of intoxicating liquor. A search of plaintiff's person and his machine established that this suspicion was un-

founded. In affirming a judgment against the defendants, the appellate court declared in the course of its opinion:

"Nor can we follow the logic of those cases that distinguish between wrongful acts perpetrated by an officer *colore officii,* who having a writ, executes it against a person whom the writ does not designate, and wrongful acts perpetrated by an officer, who, *colore officii,* without a writ, commits a wrongful act to the injury of another, for it is the *colore officii* which enables him to commit such act. The wrongful act in each case being an excess of power, the character of the excess is not significant if done under color of the office and injury results therefrom."

The opinion cites many cases from some of the leading courts of last resort of the nation, and makes use of pertinent extracts from the language they employ to illustrate their reasoning relative to the question now before us.

We are not inclined to adopt a rule which would, in large measure, tend to complicate future adjudications concerning the liability of officials and their sureties. As already intimated, the views as expressed in the excerpts hereinabove quoted in this opinion from the several authorities we have cited, appeal to us as sound and sensible, and as expressive of the better logic.

Inasmuch as the matters we have considered appear to be all the points seriously urged to support the judgment below, it follows from what we have said that that judgment should be reversed and the cause remanded, with instructions that the demurrers of the defendants be overruled and that they be required to answer, and for further proceedings not inconsistent with this opinion.

*Reversed and Remanded.*

BLUME, C. J., and KIMBALL, J., concur.