T. A. BORDELON V. A. G. PHILBRICK ET AL.

No. 6402.   Decided June 26, 1935.
(84 S. W., 2d Series, 710.)

*B. W. Ashworth, C. E. Farrall* and *W. H. Hall,* all of Dallas, for plaintiff in error.

Third parties have a right of action against a constable on his bond, notwithstanding the changed language in Article 6881, R. S., 1925. Lammon v. Feusier, 111 U. S., 17, 28 L. Ed., 337; Fischer v. Simon, 95 Texas, 234, 66 S. W., 447; 5 Cyc., 771-Bonds; 36 Cyc., 36-Statutes, etc.; R. S., 1925, Art. 1991; Tabor v. McKenzie, 49 S. W. (2d) 874.

*William R. Herring,* of Dallas, for defendants in error.

The obligation of a surety upon the official bond of a constable cannot be extended beyond the terms of such bond, and does not inure to the benefit of one not a party thereto, in the absence of express provisions of law providing therefor. Clough v. Worsham, 74 S. W., 350; McRea v. McWilliams, 58 Texas, 328; United States Fidelity & Guar. Co. v. Jasper, 120 S. W., 1145.

A writ of sequestration, fair and legal on its face in every way, and apparently signed by the Justice of the Peace as required by law, protects the officer executing such writ, even though the same be faulty and void or voidable by reason of not having been signed correctly by the Justice of the Peace as required by law. Rice v. Miller, 70 Texas, 613; Wettermark v. Campbell, 57 S. W., 904; Wilson v. Moore, 122 S. W., 577.

MR. JUDGE GERMAN delivered the opinion for the Commission of Appeals, Section A.

This suit was instituted by plaintiff in error, T. A. Bordelon, who will be herein referred to as plaintiff, against A. G. Philbrick, a former constable of Justice Precinct No. 7 of Dallas County, and National Surety Company, who will be herein referred to as defendants. The suit was based upon an alleged breach of the bond of said Philbrick as constable. As the Court of Civil Appeals disposed of the case upon the sole proposition that an injured third party had no right of action upon the bond of the constable under Article 6881 of the Revised Civil Statutes of 1925, and as that is the first question we feel called upon to decide, it is unnecessary to make a fuller statement as to the nature of the suit at this time.

Having been duly elected to the office of constable, Philbrick as principal and National Surety Company as surety, on November 30, 1928, executed a bond in the sum of $1500, whereby he bound himself unto "the Governor of Texas, Austin, Texas, and his successors in office," with the following condition:

"The Condition of the above obligation is such, that, whereas, the above bounden A. G. Philbrick was on the 6th day of November, 1928, duly elected to the office of Constable in and for Dallas County, in the State of Texas; Now, therefore, if the said A. G. Philbrick shall faithfully perform and discharge all the duties required of him by law as Constable aforesaid, then this obligation shall be void, otherwise to remain in full force and effect."

This bond was duly approved by the commissioners' court of Dallas County December 31, 1928, and was properly filed in the office of the County Clerk and recorded.

Originally plaintiff brought suit in his own name, but later, on the theory that the suit should be brought in the name of the State of Texas in his behalf, the trial court permitted him to substitute the name of the State of Texas as plaintiff. He then filed a substituted petition, reciting as follows:

"Now comes the State of Texas by and through T. A. Bordelon, hereinafter called plaintiff, and represents to the court that T. A. Bordelon is the party to whom any judgment rendered in this cause in favor of the plaintiff will inure."

He then alleged that Philbrick had been duly elected Constable of Precinct No. 7; that he qualified by giving a bond which was duly approved as required by law, and set out the bond in haec verba. He prayed for recovery in the name of

the State to be paid to the clerk and then paid by the clerk to himself.

Prior to the codification of 1925 and beginning with an Act of 1846, what is now Article 6881 of the Revised Statutes of 1925, read substantially as follows:

"Every person who may be elected to the office of constable shall, before entering upon the duties of the office, give a bond with two or more good and sufficient sureties, to be approved by the commissioners court of his county, for such sum as may be directed by said court, not less than five nor more than fifteen hunderd dollars, payable to the governor and his successors in office, conditioned for the faithful performance of all the duties required of him by law; and shall also take and subscribe the oath of office prescribed by the constitution, which shall be indorsed on said bond, together with the certificate of the officer administering the same; which bond and oath shall be recorded in the office of the clerk of the county court, and deposited in said office; said bond shall not be void on the first recovery, but may be sued on from time to time in the name of the party injured until the whole amount thereof is recovered."

By the codification of 1925 Article 6881 was made to read as follows:

"Each person who may be elected to the office of constable shall, before entering upon the duties of the office, give a bond with two or more good and sufficient sureties to be approved by the commissioners court of his county, for such sum as said court may direct, not less than five hundred nor more than fifteen hundred dollars, conditioned for the faithful performance of all the duties required of him by law; and shall also take and subscribe the official oath, which shall be indorsed on said bond, together with the certificate of the officer administering the same."

It will be observed that the provision that the bond be payable to the Governor and his successors in office and the further provision that the same may be sued upon from time to time in the name of the party injured until the whole amount thereof is recovered, are omitted from said article as adopted in 1925. Upon the theory that a third party has no right to sue upon such a bond without legislative authorization, the Court of Civil Appeals held that the omission of the language above mentioned took away the right of an injured third party to maintain an action upon the bond. 53 S. W. (2d) 94.

We call attention to the fact that a portion of what was

formerly this article is now Article 6003 of the Revised Statutes of 1925, which is as follows:

"No official bond shall be void upon first recovery but may be sued upon in separate actions until exhausted."

We also call attention to the fact that the codifiers no doubt intended by Article 6000 to make the bonds of constables payable to the county judge instead of to the Governor and this explains why the provision with reference to payment to the Governor was omitted from Article 6881. Article 6000 is as follows:

"All officials bonds of county officers that are required by law to be approved by the commissioners court, and which have been so approved, shall be made payable to the county judge and safely kept and recorded by the county clerk in a book kept for that purpose."

In 1933 the Legislature amended Article 6881 so as to make it read as it formerly read. (Acts 43rd Leg., p. 287, ch. 115).

As the bond here in question was executed in 1928 and prior to the amendment mentioned, we have the following situation:

1 Article 6881 does not designate to whom a constable's bond shall be made payable, while Article 6000 (if a constable be regarded as a county officer) provides that such bond be made payable to the county judge; and in this instance we have a bond payable to the Governor. It is apparent, therefore, that neither article of the statute specifically authorized the bond to be made payable to the Governor. Obviously, therefore, the bond is not technically a statutory bond. However, it was voluntarily given by Philbrick as his official bond, and by virtue of same he took his office and assumed to perform the duties thereof, and there is no question but what it is good and may be sued upon as a common law obligation. Watkins v. Minter; 107 Texas, 428, 180 S. W., 227; Colorado Natl. Bank v. Lester, 73 Texas, 542, 11 S. W., 626; Jones v. Hays, 27 Texas, 1; Hines v. Norris, 81 S. W., 791; State v. Horn, 94 Mo., 162, 7 S. W., 116.

The only serious question, therefore, is as to the right of plaintiff to maintain an action thereon in his own name or in the name of the State of Texas for his use and benefit.

2 The obligation of the bond was that Philbrick should "faithfully perform and discharge all duties required of him by law as constable." We have no hesitancy in holding that regardless of whether the bond should have been made payable to the

Governor or to the county judge, it was intended for the use and benefit of all persons who might be injured or affected by a failure of the constable to faithfully perform and discharge all duties required of him by law. Howard v. United States, Use of Stewart, 184 U. S., 676, 22 Sup. Ct., 543, 46 L. Ed., 754.

It appears to be the theory of defendants in error, which theory was sustained by the Court of Civil Appeals, that the bond in this instance was an official bond. Based upon the proposition that it was an official bond, they contended that the same could not be sued upon by a private party "in the absence of some express provision of the law which would be read into the bond as a part thereof authorizing suit upon such official bond by a private individual for a wrong, if any, done him by such officer." The answer to this contention is found in Article 1991 of the Revised Statutes of 1925. That article is as follows:

"Whenever an official bond is made payable to the State of Texas, or any officer thereof, and a recovery thereon is authorized by, or would inure to the benefit of parties other than the State, suit may be brought on such bond in the name of the State alone for the benefit of all parties entitled to recover thereon."

3 While there was no express provision in the law directing that the bond be made payable to the Governor, yet it was made so payable and was undobutedly intended by Philbrick as his official bond. It was approved as his official bond and it was by virtue of this bond that he took possession of the office and assumed its duties, and we think it should be regarded as his "official bond" within the purview of Article 1991. This being true, the case was one which could be very appropriately brought by plaintiff in the name of the State for his use and benefit, he having specially pleaded that a recovery would inure to his benefit. Regarding this as an official bond, it is obvious that the situation is controlled by Article 1991 and plaintiff is authorized to sue upon the same.

We do not want to be understood as holding that an injured third party would not have a right to sue upon an official bond made payable to the Governor of the State, even in the absence of Article 1991. There is strong authority to support the conclusion that he could bring such a suit in his own name or in the name of the State for his use. Howard v. United States, supra; Eastland County v. Hazel, 288 S. W., 518 (writ of error ref.); Lynch v. Burgess, 40 Wyo., 30, 273 Pac., 691, 62 A. L. R., 849.

But if, due to the fact that this was not strictly speaking a statutory bond, it might be said not to be an "official bond" within the purview of Article 1991, yet it was undoubtedly what is known as a voluntary "Common Law" obligation, and may be sued upon by any injured party for whose use and benefit it was intended. The case of Watkins v. Minter, 107 Texas, 428, 180 S. W., 227, is so directly in point and so conclusively settles the matter that further comment is hardly necessary.

The case of Hines v. Norris, supra, was a suit brought by an injured party against a constable and the sureties on his bond. The trial court sustained an objection to the introduction of the bond because it was made payable to the county judge and not to the Governor. This was held to be error. The court said:

"If it be conceded that it was not a good statutory bond, it does not follow that appellant was not entitled to recover thereon. That such a bond is a good common-law obligation, and that a party injured by the wrongful acts of an officer acting in his official capacity thereunder can maintain an action on such bond for his damages, seems well settled."

In the case of Jones v. Hays, 27 Texas, 1, a replevy bond was made payable to the sheriff instead of to the plaintiff in execution. The plaintiff in execution was permitted to recover against the maker of the bond and his sureties. The suit was apparently brought by the plaintiff in the name of the sheriff for his (plaintiff's) use.

In the case of State ex rel. Jean v. Horn, 94 Mo., 162, 7 S. W., 116, by the Supreme Court of Missouri, the court held as follows:

"The only particular in which the bond sued on fails to comply with the provisions of this act is that the obligee in the bond is the 'state of Missouri,' instead of 'the township trustee,' and although for this reason it be conceded that it is not a good statutory bond, it does not therefore follow that it is not binding on the defendants, nor that this action cannot be maintained. The bond was voluntarily executed by the defendants, for a valuable consideration; it contains all the essential elements of a valid and binding obligation independent of the statute, is a good common-law bond; and a suit in the name of the obligee therein may be maintained against the obligors for a breach of its condition by any person injured by such breach."

In the case of Watkins v. Minter, supra, parties attempted to make a bond in pursuance of the statute for the purpose of

obtaining the release of a person who had been adjudged insane. The bond was made payable to the county judge of Hopkins County instead of to the State as required by the statute. The suit was brought by an injured third party against the maker of the bond and his sureties, and the Supreme Court held that it could properly be maintained on the bond as a common-law obligation. In the opinion by Chief Justice Phillips the court said:

"Being only a common law obligation, the bond derives no aid from the statute, but its terms are such as to clearly render it enforcible without reference to the statute. Its condition is that the principal of the bond, L. B. Minter, will faithfully protect and cause to be protected all human and animal life from the acts of the insane person released into his care, and will be responsible for all damages that might arise by reason of such person's acts. Under these terms it is plain that a suit could be maintained on the bond by the obligee therein for the use of anyone injured as the result of L. B. Minter's negligence in his restraint of the lunatic; *and a person for whose use such a suit might be maintained, could, himself, prosecute it.* Smith v. Wingate, 61 Texas, 54."

There is a line of cases dealing with criminal process or preservation of the public peace which apparently establish a different rule from cases involving acts of peace officers in connection with civil process, and in that class fall the case of American Indemnity Company v. Yocham, 42 S. W. (2d) 817, and the cases there cited.

4   While in this instance the plaintiff did not expressly declare on the bond as a common-law obligation, yet he fully alleged all the circumstances of its execution and set out the bond in full. We therefore conclude that the petition was sufficient to support a recovery on the theory that the bond was a common-law undertaking. We also think that under the circumstances the pleading may be regarded as sufficient to support an action in his own behalf, or in the name of the State for his use.

The trial in the county court resulted in an instructed verdict in favor of defendants in error. As the judgments of the trial court and of the Court of Civil Appeals may be upheld upon another proposition, and as this court has jurisdiction, we will proceed to dispose of the case.

The parties will be designated as in the trial court. Plaintiff alleged that by virtue of two writs of sequestration which had been issued out of the justice court of Dallas County and

placed in the hands of Philbrick as constable, certain property has been taken from his possession and delivered into the possession of Metropolis Company, a corporation, at whose instance the writs had been issued. Apparently Metropolis Company had filed two suits of some kind against plaintiff, and the writs were issued after proper affidavits had been filed and bonds executed. Some two years after the issuance of the writs and the taking of the property by the constable the suits were, on motion by plaintiff here, dismissed for want of prosecution. Shortly thereafter plaintiff made demand of the constable for the return of the property. Failing to get possession, this suit was instituted. Among other things, plaintiff alleged with reference to the property as follows: "Said property being in the possession of T. A. Bordelon, to which he had a lawful right of possession and to which he had a money interest."

While on appeal plaintiff asserts that the writs were defective or void, and that the constable was guilty of conversion by taking the property thereunder, yet we find that his pleading was based upon no such theory, but was in effect based upon the claim that there had been a violation of the duties prescribed by Article 6846 of the Revised Statutes of 1925. In other words, he sought to hold the constable and his sureties liable for the full value of the property, because it was not returned to him after the dismissal of the suits.

When plaintiff sought to prove his case he testified in substance as follows: That he rented a building in the City of Dallas, and at the time of renting it found the property in question, consisting of certain kitchen furniture, light fixtures, ets., therein; that such property belonged to Metropolis Company; that he had some kind of an agreement with a Mr. McGee who had some connection with the Metropolis Company to the effect that if the furniture remained in the house he (plaintiff) would be paid some rental; that the property remained in the house for sometime and he (plaintiff) charged certain rent for allowing it to remain in the house. There is no proof of any contractual agreement as to the amount of the rent, or as to a lien, and proof of nothing which would have prevented Metropolis Company from removing the property at any time. Plaintiff admitted that he never had any title to the property, that it belonged to Metropolis Company, but claimed some kind of a lien thereon by reason of his charges for rent.

5, 6 If the plaintiff had a remedy under the circumstances, it seems to us it should have been upon the sequestration bonds. The authorities relied upon involve actions upon such bonds. This, however, is an entirely different case. We are of the opinion that to justify an action against a constable and the sureties on his bond for the full value of property taken under a writ of sequestration, it is necessary for a plaintiff to show some substantial interest in the property, or at least that he was entitled to the possession as against the plaintiff in the sequestration suit, and that he has suffered some substantial damage by reason of the property not being returned. In this instance the claim for rent was wholly unliquidated, and rested upon the testimony of plaintiff that he had some kind of an arrangement with Mr. McGee to be paid rent. In addition, he admitted that the property belonged to Metropolis Company, and there was no reason shown why that company was not entitled to the possession at any time. It seems to be well settled that if one is in possession of property under mortgage which permits the mortgagee to take possession on default, he cannot maintain an action for damages if the property is taken under some kind of a writ, even though the writ be wrongfully procured. Brunson v. Dawson State Bank, 175 S. W., 438 and authorities cited. In this instance, so far as the proof shows, Metropolis Company had a right to obtain its property at any time. If perchance it resorted to sequestration in order to obtain possession peacefully (and the fair inference is that it did so), it is very questionable as to plaintiff's right to proceed against it for damages or to sue upon the sequestration bond. This being true, we do not believe that plaintiff could hold the constable and his sureties liable upon the constable's bond without showing a substantial damage to himself, which he could not do without proving a more substantial interest in the property than was shown. Horn v. Zimmer, 180 Ill. App., 320.

For the reasons stated herein the judgments of the trial court and of the Court of Civil Appeals are affirmed.

Opinion adopted by Supreme Court June 26, 1935.