# Construction and General Labor Union, Local No. 688, et al v. H. I. Stephenson.

No. A-2322. Decided January 4, 1950.
Rehearing overruled February 1, 1950.
(225 S. W., 2d Series, 958.)

*Mullinax, Wells and Ball,* and *L. N. D. Wells,* all of Dallas, for petitioners.

The Court of Civil Appeals erred in overruling petitioners' contention that the injunction was improperly issued as it de-

prived the labor unions of their constitutional rights of free speech and free assembly. Ex Parte Henry, 147 Texas 315, 215 S. W. (2d) 588; North East Texas Motor Lines v. Dickson, 148 Texas, (this vol.) 35, 219 S. W. (2d) 795.

*Singleton, Smyth, Morris, Lockhart & Edwards* and *E. Byron Singleton,* all of Amarillo, *Looney, Clark & Moorhead, Everett L. Looney* and *Edward Clark,* all of Austin, for respondent.

The injunction was properly issued inasmuch as the purposes behind the picketing were violative of a valid statute of this state, and in the absence of a labor dispute picketing may be enjoined. International Union of Operating Engineers v. Cox, 148 Texas (this volume) 42, 219 S. W. (2d) 787; Bakery & Pastry Drivers v. Wohl, 315 U. S. 769, 62 Sup. Ct. 816; Giboney v. Empire Storage & Ice Co., 336 U. S. 490, 69 Sup. Ct. 684.

MR. JUSTICE HART delivered the opinion of the Court.

The question before us is whether a permanent injunction against peaceful picketing can be sustained under Texas statutes when attacked on the ground that it deprives the petitioners of their rights under the Fourteenth Amendment to the United States Constitution.

The picketing was directed against the respondent, H. I. Stephenson, who is engaged in the house-moving business. He uses special equipment and employs a crew of men who perform all of the tasks necessary to dismantling and removing a building from one place and transporting it to and setting it up at another location. None of the members of this crew belong to any union.

Stephenson contracted with Potter County to dismantle two hangars at Dalhart and to transport them to Amarillo and to reconstruct them there as one building. Before he began work on this contract, Stephenson was approached by union representatives who wished to have the members of his crew joint unions. Stephenson stated that he had no objections to their joining unions, and agreed that the union representatives could talk to a meeting of his crew. They did, and an election was held in which Stephenson's employees voted not to join any union. An effort was made by union representatives to have Stephenson employ union men in the work at Dalhart, but there was no interference by the union with Stephenson's work until the hangars had been removed to Amarillo and the work of reconstruction had started there. The union representatives

then attempted to persuade Stephenson to substitute union men for his non-union regular crew in this work. Upon his refusal to do so, they picketed Stephenson's job, a single picket carrying a banner reading as follows:

"Amarillo Building and Construction Trades Council protest the employment by Ira Stephenson and Company of non-union labor on this job, and the failure of the employees on this job to join unions affiliated with the Amarillo Building and Construction Trades Council."

Stephenson thereupon brought suit, alleging that the unions' purpose was to force him to hire only union men and to compel his crew to join two local unions, that no labor dispute existed as defined by Texas statutes, and that the picketing was in violation of Texas statutes, particularly referring to Article 5154f, Vernon's Ann. Civ. St. (Acts 1947, 50th Leg., p. 779, ch. 387). He prayed for temporary and permanent injunctive relief against picketing. The unions and their business agents who were named as defendants answered that a bona fide labor dispute existed, that Stephenson had agreed to employ only union members on the re-erection job in Amarillo but had failed and refused to carry out this agreement and had employed non-union labor at wages below the union scale, that the unions and their members had a constitutional right to picket Stephenson's job, and that to the extent that Texas statutes prohibited the exercise of this right they were invalid.

The defendants waived a hearing on a temporary injunction and argeed that the court might proceed to a hearing on the merits. After a trial without a jury, the court rendered judgment in favor of Stephenson permanently enjoining the unions and their members from picketing the premises where Stephenson was performing his work, "unless at such time controversy then exists between plaintiff and the majority of his employes concerning wages, hours or conditions of employment, or a controversy exists between plaintiff and the majority of his employes belonging to any one labor union concerning wages, hours or conditions of employment." This judgment has been affirmed by the Court of Civil Appeals. 221 S. W. (2d) 375.

██ No request was made of the trial court to make and file findings of fact and conclusions of law, under Rules 296-299, Texas Rules of Civil Procedure, and no separate findings and conclusions were filed. In the absence of findings of fact in a case tried without a jury, it is settled that we must test the validity of the judgment on the assumption that the trial court

found every disputed fact in such a way as to support the judgment he rendered. Rolison v. Puckett, 145 Texas 366, 198 S. W. (2d) 74; International Union of Operating Engineers v. Cox, 148 Texas (this volume) 42, 219 S. W. (2d) 787; North East Texas Motor Lines v. Dickson, 148 Texas (this volume) 35, 219 S. W. (2d) 795. Petitioners point out that the judgment in this case recites certain findings of fact and, after granting an injunction against picketing provides that all other relief not specifically granted is denied. However, this denial of other relief does not constitute a finding of the non-existence of facts not recited in the judgment; and in this situation omitted findings necessary to support the judgment will be supplied by a presumption in support of the judgment, if there is evidence in the record to sustain such omitted findings. Bednarz v. State, 142 Texas 138, 176 S. W. (2d) 562. Moreover, it is established that this court will not reverse a judgment of the trial court affirmed by the Court of Civil Appeals if the judgment is correct in view of the entire record, even though in our opinion one or both of the lower courts have given erroneous reasons for rendering or upholding the judgment. Walker v. Garland, Tex. Com. App., 235 S. W. 1078; Bordelon v. Philbrick. 125 Texas 460, 84 S. W. (2d) 710; Payne v. Bracken, 131 Texas 394, 115 S. W. (2d) 903. This rule is not contrary to the holdings in Safety Casualty Co. v. Wright, 138 Texas 492, 160 S. W. (2d) 238, and Kousal v. Texas Power & Light Co., 142 Texas 451, 179 S. W. (2d) 283, to the effect that parties are restricted in the appellate court to the theory on which the case was tried in the lower court. In the present case, the case was tried in part on the theory on which we hold the judgment can be sustained, as is shown by the pleadings and the evidence in the record, and therefore the fact that the lower courts rested their judgments in part on what we hold to be erroneous legal reasons does not require a reversal of the judgment.

The ground on which the district court apparently based his judgment was that the picketing was unlawful because no labor dispute existed between Stephenson and any of his employees, and therefore the picketing in question was "secondary picketing" as defined and prohibited by Article 5154f, Vernon's Ann. Civ. St. The Court of Civil Appeals sustained this reason for the judgment, and also placed its judgment in part on the basis that the purposes for which the unions picketed Stephenson were not lawful purposes or objectives. 221 S. W. (2d) at 380, 381. In spite of our settled policy not to decide constitutional questions where they can be avoided, we must determine whether Article 5154f can be validly applied to sustain the

injunction in this case, because the injunction by its terms incorporates the provisions of Sec. 2, par. h of that statute, and the petitioners specifically attack this portion of the trial court's judgment.

■ We do not think that the injunction can be upheld on the ground that no "labor dispute" existed because there was in fact no dispute between Stephenson and any of his employees. To the extent that Article 5154f restricts the meaning of a "labor dispute" to a controversy between an employer and his employees and prohibits picketing except where such a controversy exists, we think that the statute is in conflict with the Fourteenth Amendment as construed by the Supreme Court of the United States in American Federation of Labor v. Swing, 312 U. S. 321, 61 Sup. Ct. 568, 85 L. Ed. 855, and Cafeteria Employees Union, Local 302 v. Angelos, 320 U. S. 293, 64 Sup. Ct. 126, 88 L. Ed. 58, and that the statute must yield. In the Swing case the Supreme Court held, and repeated in the Angelos case, that "a state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him." 312 U. S. at 326, 85 L. Ed. 855, 61 Sup. Ct. 568, 320 U. S. at 296, 88 L. Ed. 58, 64 Sup. Ct. 126. The rule is thus stated unequivocally as a constitutional limitation on the exercise of power by a state in dealing with industrial disputes, and we must therefore hold that the admitted fact that none of Stephenson's employees had any quarrel with him will not justify the issuance of the injunction in this case.

■ The Court of Civil Appeals undertook to distinguish the Swing case, supra, citing Carpenters & Joiners Union of America, Local No. 213 v. Ritter's Cafe, 315 U. S. 722, 62 Sup. Ct. 807, 86 L. Ed. 1143, on the ground that there was no "interdependence of economic interests" between the petitioners and Stephenson's employees, emphasizing the facts that house moving is a specialized business, that there are no house movers' union for Stephenson's employees to join, and that Stephenson's employees performed a variety of tasks, many of which were not performed by any members of the picketing unions. Conceding all of this to be true, still we think that the undisputed facts compel the conclusion that a relation existed between the work which Stephenson's employees were doing at the time of the picketing and the work which the union members were accustomed to perform which would give them a real and substantial economic interest in the work on Stephenson's job. The undisputed evidence shows that the work of erecting

the steel trusses was work which members of the iron workers' union were accustomed to do. Other work being done in the erection of the building came within the tasks usually performed by members of the carpenters' and the laborers' unions. Moreover, union members were employed by the county on the same job and had to work alongside of Stephenson's employees. We believe, therefore, that it must be concluded that the unions had a legitimate concern with the work done by Stephenson's employees, and that therefore the injunction cannot be sustained on the basis of the absence of such concern.

■ Without specifically referring to Article 5207a, Vernon's Ann. Civ. St. (Acts 1947, 50th Leg., p. 107, ch. 74) the Court of Civil Appeals indicated in its opinion that it considered the purpose for which petitioners picketed to be unlawful. 221 S. W. (2d) at 380, 381. Stephenson alleged in his petition in the district court that the purpose of the picketing was to compel Stephenson to employ only union men on this job. The answer filed by the unions sought to justify the picketing on the ground that Stephenson had violated an alleged agreement to employ only members of unions affiliated with the Amarillo Building and Construction Trades Council. The banner carried by the picket protested the employment by Stephenson of non-union men and the refusal of his employees to join the unions. The testimony heard by the court reasonably sustains the conclusion that the purpose of the unions was to make this a union job. There was therefore a substantial basis in the record for the trial court to conclude that the immediate purpose of the picketing was to compel Stephenson to discriminate in favor of union members and against non-union men in hiring his employees, in violation of Article 5207a, which reads in part as follows:

"Section 1. The inherent right of a person to work and bargain freely with his employer, individually or collectively, for terms and conditions of his employment shall not be denied or infringed by law, or by any organization of whatever nature.

"Sec. 2. No person shall be denied employment on account of membership or nonmembership in a labor union.

"Sec. 3. Any contract which requires or prescribes that employees or applicants for employment in order to work for an employer shall or shall not be or remain members of a labor union, shall be null and void and against public policy. The provisions of this Section shall not apply to any contract or contracts heretofore executed but shall apply to any renewal or extension of any existing contract and to any new agreement or contract executed after the effective date of this Act."

■ There cannot be any question regarding the constitutionality of Article 5207a in view of the recent decisions of the Supreme Court of the United States upholding almost identical provisions contained in the statutes and constitutions of other states. Lincoln Federal Labor Union v. Northwestern Iron & Metal Co. and Whitaker v. North Carolina, 335 U. S. 525, 69 S. Ct. 251, 93 L. Ed. Adv. Op. 201, and American Federation of Labor v. American Sash & Door Co., 335 U. S. 538, 69 S. Ct. 258, 93 L. Ed. 209.

The immediate purpose of the picketing being to compel Stephenson to violate the statutory prohibition by denying employment to his regular crew because of their nonmembership in a labor union and to require him in violation of the statute to abide by an alleged agreement requiring his employees to be members of labor unions, the picketing was not entitled to constitutional protection and could be validly enjoined. This follows from the decision of the Supreme Court of the United States in Giboney v. Empire Storage and Ice Co., 336 U. S. 490, 69 Sup. Ct. 684, 93 L. Ed. 649. There it was held that picketing could be enjoined where it was designed to compel a violation of a valid Missouri statute prohibiting combinations in restraint of trade. Here a different statute is involved, but the Texas statute, like the Missouri law, represents a solemn and valid declaration of an important public policy by the legislative branch of the state government. We have recently recognized, in line with decisions of the Supreme Court of the United States, that picketing is one form of the exercise of the constitutional right of freedom of speech. Ex parte Henry, 147 Texas 315, 215 S. W. (2d) 588; International Union of Operating Engineers v. Cox, 148 Texas 42, 219 S. W. (2d) 787. But we have been careful to point out that there must be a valid controversy, International Union of Operating Engineers v. Cox, (this vol.) 42, 219 S. W. (2d) at 794, and that the picketing must be for lawful purposes. North East Texas Motor Lines v. Dickson, (this vol.) 35, 219 S. W. (2d) at 798. Since the purpose of the picketing in this case was to bring about a violation of a valid statute, the purpose was unlawful, and under the Giboney case, supra, it could validly be enjoined. See, also, Fred Wolferman, Inc. v. Root, 356 Mo. 976, 204 S. W. (2d) 733; R. H. White Co. v. Murphy, 310 Mass. 510, 38 N. E. (2d) 685, 174 A. L. R. 585; Restatement of Torts, sec. 794; Dodd, "Picketing and Free Speech: A Dissent," 56 Harv. L. Rev. 513 at 523-524.

■ Petitioners urge, however, that the objective of their picketing was to improve wage and working conditions, because the

evidence shows that some of Stephenson's employees were paid less than the union scale and there was some evidence that Stephenson's non-union employees were so inexperienced in heavy steel work as to endanger union men working on the same location. On the record before us, there is evidence to support a conclusion that the unions were only concerned with making Stephenson's job a union job and that they agreed that if Stephenson's employees joined the unions Stephenson could continue the same men on the job at the same wages he was then paying them. Under our settled procedure, we must presume that the trial court so found. Aside from this, however, we note that in the Giboney case the facts showed that "one objective of the organizational drive was to better wage and working conditions of peddlers and their helpers." 69 S. Ct. at 685, 93 L. Ed. at 651. Nevertheless, the court held in that case that since the immediate objective of improving wages and working conditions would not justify the picketing. Similarly here, the immediate purpose being to cause a discrimination among employees on the basis of their membership or nonmembership in a union, the underlying purpose of improving wages and working conditions would not validate the picketing.

■ We sustain the granting of the injunction on the ground that the picketing had as its unlawful purpose to cause a violation of Article 5207a: However, we think that the petitioners are in part correct in saying that the terms of the injunction should be modified. The requirement that before picketing will be permitted there must be a dispute between Stephenson and a majority of his employees or between him and a majority of such employees belonging to any one labor union, concerning wages, hours or conditions of employment, is invalid, as we have held, and should be eliminated. The application of the injunction is of course to be confined to picketing for unlawful purposes, as disclosed by the facts of this record, and is not to be construed to prevent peaceful picketing at proper places for lawful purposes, or other methods of publicizing any legitimate protests which petitioners may have against respondent.

■ Petitioners assign error to the alleged failure of the Court of Civil Appeals to make supplemental findings of fact under Rule 455, Texas Rules of Civil Procedure. Under Rule 482 we could refer the case back to the Court of Civil Appeals for further findings, if we were of the opinion that additional findings of fact by that court were necessary to enable us properly to determine the rights of the parties. We believe, however, that the Court of Civil Appeals' opinion sufficiently states its conclusions on the controlling issues of fact, that many of the find-

ings requested by the petitioners were evidentiary and argumentative, and that the Court of Civil Appeals properly refused to make the requested findings. Nowlin v. Hall, 97 Texas 441, 79 S. W. 806.

The judgment of the district court is modified, and as modified, that judgment and the judgment of the Court of Civil Appeals are affirmed.

Opinion delivered January 4, 1950.

MR. JUSTICE GRIFFIN, joined by JUSTICE SHARP, concurring.

We are all in agreement that the judgment of the trial court and the Court of Civil Appeals must be affirmed on the second ground stated in the opinion. Therefore any ruling on the constitutionality of Art. 5154f in this cause is unnecessary to a decision of this case. Regardless of our holding on this question as to Art. 5154f, the judgment must be affirmed. As I understand the law, Courts should not declare acts of the Legislature unconstitutional unless necessary to do so for a decision in the case at hand. For that reason I do not concur in the decision that Art. 5154f is unconstitutional but reserve that for determination when the point squarely arises.

Opinion delivered January 4, 1950.

Rehearing overruled February 1, 1950.