## SHEET METAL WORKERS LOCAL NO. 175 et al. v. WALKER.

### No. 2869.

Court of Civil Appeals of Texas. Eastland.

Feb. 9, 1951.

Rehearing Denied March 2, 1951.

Scarborough, Yates, Scarborough & Black, Abilene, for appellants.

Smith, Eplen & Bickley, Abilene, for appellee.

PER CURIAM.

C. A. Walker obtained a temporary injunction enjoining Sheet Metal Workers Local No. 175, and others, from picketing Walker's place of business and they have appealed.

Walker did business as Abilene Plumbing and Roofing Company. He alleged that appellants posted a picket line in front of and back of his place of business and caused pickets to carry signs with the following inscription: "Abilene Plumbing & Roofing Company Sheet Metal Local Number 175 Striking for Recognition." Walker alleged, in substance, that before the establishment of said picket line the Union demanded he execute a contract which had the effect of making his sheet metal business a closed shop, in violation of Articles 5207a and 5154f, Vernon's Ann.Civ.St.; that there was no labor dispute; that the only controversy was over Walker's refusal to sign a contract for a closed shop; and that appellants' demands violated the statutes and public policy; that he had some employees who were not members of the Union who refused to cross the picket line and return to work, which prevented Walker from completing his outstanding contracts and subjected him to irreparable loss, amounting to $500 per day.

Article II of the contract applied to all of Walker's employees engaged in sheet metal work. The contract provides that Walker shall recognize said Union as the sole bargaining agency for his sheet metal workers. The following are all of the other provisions of the contract that could be pertinent to the point to be decided:

"Article III.

"Section 1. The employer agrees that none but journeymen sheet metal workers and registered apprentices whose qualifications as such are recognized by the Union, shall be employed on any work described in Article II.

"Article IV.

"Section 1. The Union agrees to furnish at all times to the Employer, duly qualified journeymen sheet metal workers and registered apprentices in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement.

"Section 2. Whenever, after reasonable notice (48 hours excluding Saturdays, Sundays and Holidays) the Union is unable to furnish a sufficient number of duly qualified journeymen sheet metal workers to meet the necessary requirements of the Employer, then the Employer may secure from other sources such additional journeymen sheet metal workers as may be necessary, it being understood that such additional journeymen sheet metal workers secured from other sources shall comply with the requirements of membership of the Union.

\* \* \* \* \* \*

"Article VII.

"Section 3. When sent by the Employer to supervise or perform work specified in Article II of this Agreement outside of the jurisdiction of the Union and within the jurisdiction of another Local Union affiliated with Sheet Metal Workers' International Association, journeymen sheet metal workers covered by this Agreement shall immediately report to the officers or representatives of the Local Union into whose jurisdiction they have been sent before starting to work.

\* \* \* \* \* \*

"Article XI.

"Section 1. Any provision of this agreement which is contrary to any valid applicable state or federal law shall not be effective. However, the parties believe the Labor-Management Act of 1947 may be amended so as to validate clauses herein not now effective but which will automatically then become effective upon the passage of additional legislation. If any new legislation creates questions of compliance or language, it is acknowledged that amendments to the agreement, first approved by the Sheet Metal Workers'

International Association and the Sheet Metal Contractors' National Association, shall forthwith be added and become a part of this agreement."

Mr. Walker testified that the only controversy was over his refusal to sign the contract; that his only reason for refusing to sign was because it called for a closed shop, that is, one in which only Union employees worked; that he would sign it but for said provisions and that he had offered to sign it if appellants would write therein to the effect that it was an open shop. The court found the facts as contended by Walker. The evidence sustains said findings.

Our statutes provide that no person shall be denied employment because of membership or non-membership in a labor union. Section 1, Article III, provides that Walker shall employ none but journeymen sheet metal workers and registered apprentices "whose qualifications as such are recognized by the Union." Section 1, Article IV provides that the Union shall furnish to Walker qualified sheet metal workers and registered apprentices "in the manner and under the conditions specified in this agreement." Section 2 of Article IV provides that if, after 48 hours notice by Walker to the Union, excluding Saturdays, Sundays and Holidays, *"the Union is unable to furnish"* a sufficient number of workers, then the employer may secure *"from other sources"* such "additional" sheet metal workers as may be necessary. However, it is provided that even if the Union is unable to furnish employees after the agreed notice, the "additional" workers *"secured from other sources"* shall "comply with the requirements of membership of the Union." Section 3 of Article VII provides that when Walker sends such employees out of Abilene and within the jurisdiction of another Union, that his sheet metal workers shall "immediately report to the officers or representatives of the Local Union \* \* \* before starting to work." (Italics ours.)

The provisions of said contract preceding Article XI clearly provides for a

closed shop, contrary to the laws of Texas. Art. 5207a, Secs. 2 and 3. Appellants contend the contract should not be construed as requiring a closed shop because Article XI states that if any provision of the agreement is contrary to a valid state law it shall not be effective.

Under the facts found by the court, the sole cause of the controversy was Walker's refusal to sign a contract to refuse employment because of nonmembership in a Union. Since this was the sole issue between the parties and Walker agreed to sign the contract if the Union would state therein that no closed shop was intended, it would be recognizing form rather than substance to say that Article XI prevented a "closed shop" agreement. See Construction and General Labor Union, Local No. 688, v. Stephenson, Tex.Sup., 225 S.W.2d 958, 962.

The contract simply provides that the Union shall furnish Walker his employees but, if it is not able to furnish all needed, then Walker (after 48 hours, which shall not include Saturdays, Sundays nor Holidays) may obtain employees from "other sources." Walker construed the contract as prohibiting employment of non-union members and offered to sign the contract if the Union would write in the contract that a closed shop was not intended. By refusing to do so the Union likewise so interpreted the contract.

All of appellants' points have been considered and are overruled.

The judgment is affirmed.