E. J. GRAY, Appellant,

v.

Audrey WEST, Appellee.

No. 8928.

Court of Civil Appeals of Texas, Amarillo.

Oct. 23, 1978.

Rehearing Denied Nov. 13, 1978.

830

McCleskey, Harriger, Brazill & Graf, George H. McCleskey, Lubbock, for appellant.

Kirby, Ratliff, Sansom, Manning & Greak, Nolan E. Greak, Littlefield, for appellee.

DODSON, Justice.

In the venue phase of this action, E. J. Gray appeals from an order of the trial court overruling his plea of privilege to be sued in Harris County, Texas. Appellee Audrey West brought this action against C & G Enterprises, an alleged partnership, and James Christesson and Gray, individually and as partners of C & G Enterprises, alleging a breach of a written contract for the purchase and sale of 7,000 tons of cubed alfalfa. The contract, which provides that venue for any suit thereunder shall be maintained in Lamb County, Texas, was executed by West, the seller, and Christesson on behalf of C & G Enterprises, the purchaser. Gray avers that he is not a partner in C & G Enterprises. We determine that the evidence is sufficient to support the trial court's implied findings of fact essential to establish venue in Lamb County, Texas, under subdivision 5 of article 1995, Tex.Rev.Civ.Stat.Ann. (Vernon 1964). The order of the trial court is affirmed.

The essential venue facts under subdivision 5 of article 1995 are: (1) that the defendant is a party reached by the statute; (2) that the claim is based on a written contract; (3) *that the contract was entered into by the defendant or by one authorized to bind him*; and (4) that the contract by its terms provides for performance of the obligation sued upon in the county of suit. See N. K. Parrish, Inc. v. Navar, 553 S.W.2d 216 (Tex.Civ.App.—Amarillo 1977, no writ); 1 R. McDonald, Texas Civil Practice § 4.11.1 (rev. 1965). Gray challenges the legal and factual sufficiency of the evidence to support an implied finding of the trial court that Christesson had authority to bind him to the contract.

The record reveals that Gray did not testify at the evidentiary hearing on his plea of privilege. He did, however, introduce Christesson's answers to certain written interrogatories filed in the case, one of which provided that "E. J. Gray has never been a partner with C & G Enterprises." It was further stated in an answer that:

3. C & G Enterprises is not a partnership. It originated as a partnership in Lafayette, Louisiana about three years ago, said partnership consisting of J. B. Christesson and Leroy Guidry, but said partnership was terminated approximately two years ago. Since that time the business has been conducted as a solely owned business by J. B. Christesson.

West testified to each of the following occurrences and conversations. Christesson initially contacted him about the purchase of 10,000 tons of cubed alfalfa. During the subsequent negotiations, Christesson informed West that his partner, E. J. Gray, would furnish the money and share in the profits. Although Gray did not sign the contract, on the day of its execution Christesson told West that C & G Enterprises stood for Christesson and Gray and that they were "partners on the deal."

Several days after the contract was signed, Gray called West to assure him that the contract was a good deal. Gray related that he would have been present on the day the contract was signed but he had been sick. Gray further stated that he and Christesson were to meet with Jim Crump, vice president of the Texas Commerce Bank in Lubbock, on the following Monday to "set up the money to get the thing rolling."

On February 14, 1977, Christesson and Gray visited West in Sudan, Texas. Gray allegedly stated: "We've set up your $100 deal in Lubbock with Jim Crump. That's where you'll get your money as it's weighed through Lubbock, and I'm going to handle all this deal out of my Baytown office. Mr. Christesson will be in charge of shipping it." Gray also provided that "He didn't want us to worry about this contract on this hay, and that he was up here to make it work; that he had never welshed on a deal in his life, and he wasn't going to welsh on that one." Thereafter, Gray inspected the hay and took some samples. West had not delivered any of the cubed alfalfa to C & G Enterprises prior to this date.

Subsequent to these events, the first shipments of hay went through Lubbock and payments were received. The next shipments were moved to Lubbock, but were returned to Sudan when payments were not made. Subsequently, these shipments were transported to El Paso and released upon Gray's personal guarantee of payment. Payment, however, was never made.

Jim Crump stated in his deposition that when the transaction was not working as planned he talked to Gray, suggesting that a buyer was available who would purchase the hay for $95 a ton. Gray responded by insisting that he had a written contract for the hay at $100 a ton which would be honored. He would not agree to release the contract to permit West to sell the hay.

We conclude that this evidence is sufficient to raise fact issues as to whether Gray represented himself as a partner in C & G Enterprises or consented to Christesson's representations that he was a partner in C & G Enterprises. *See* Bromberg, Commentary on Partnership by Estoppel, Tex.Rev. Civ.Stat.Ann. art. 6132b, § 16 (Vernon 1970) (stating that the existence of the representation or consent is a fact question). An affirmative answer to either of these questions would operate to estop Gray from denying his partnership status with C & G Enterprises. Tex.Rev.Civ.Stat.Ann. art. 6132b, § 16 (Vernon 1970). In the absence of express findings of fact by the court, we must presume that these fact issues which were raised by the evidence were resolved by the trial court in support of the order overruling Gray's plea of privilege. *Construction and General Labor Union, Local No. 688 v. Stephenson*, 148 Tex. 434, 437–38, 225 S.W.2d 958, 960 (1950).

Gray's points of error three and four are overruled. Our view of these points is dispositive of this appeal; therefore, we deem it unnecessary to further discuss Gray's remaining points of error. Accordingly, the order of the trial court overruling the plea of privilege is affirmed.